## UNITED STATES v. BEDGOOD.[1]

*(District Court, S. D. Alabama.  July 23, 1891.)*

1. PUBLIC LANDS—PRE-EMPTION—PERJURY IN "FINAL" PROOF.
    Under Rev. St. § 2262, the proof required of a pre-emptionist is original, and he cannot be convicted of perjury on indictment alleging perjury in making "final" proof.

2. PERJURY—WHAT CONSTITUTES.
    Perjury consists of a false oath to a material point, administered by one having the legal authority, in a proceeding valid and regular in law.

3. PROBATE JUDGE—AUTHORITY TO ADMINISTER OATH.
    In Alabama the probate judge is not the clerk of the probate court, and he is the principal judge and not the clerk of the court of county commissioners, (Code Ala. 1886, §§ 789, 795, 819, 827;) and so in neither capacity is he clerk of a court of record, authorized to administer the oath in pre-emption cases, within the purview of Rev. St. § 2262, as amended June 9, 1880.

4. REVISED STATUTES—REPEAL OF EARLIER STATUTES.
    When a portion of an earlier statute is incorporated in the Revised Statutes, the remainder of the enactment not so embraced is repealed.

5. CRIMES—REPEAL OF ACT MARCH 3, 1857.
    The act of March 3, 1857, (11 St. at Large, p. 250,) as to crimes, is repealed by the Revised Statutes.  *Babcock* v. *U. S.*, 34 Fed. Rep. 873, distinguished.

6. PRE-EMPTION—RULES OF SECRETARY OF INTERIOR.
    The secretary of the interior, and not the commissioner of the general land-office, is authorized to designate the rules in relation to pre-emption entries.  Rev. St. § 2263.

7. EVIDENCE—JUDICIAL NOTICE—REGULATIONS OF LAND-OFFICE.
    Regulations of the land-office, whether prescribed by secretary of the interior or by the commissioner, are not known judicially, and must be pleaded.

8. LAND-OFFICE REGULATIONS—NOT LAW.
    Congress cannot confer law-making power on the secretary of the interior or the commissioner of the general land-office.  They may prescribe rules and regulations for the better transaction of business, but cannot make a rule which shall have the force of law, and whose infraction can be punished as a crime.

9. PERJURY—PRE-EMPTION OF PUBLIC LANDS.
    The statutes as to pre-emption entries prescribe that false oaths, knowingly and willfully made, in cases arising under the land-office rules, constitute perjury.

10. SAME—MATERIALITY OF EVIDENCE.
    The materiality of the matter sworn to must appear in the indictment for perjury. Such matters as are not required by law are not material.

At Law.  Prosecution of Frances F. Bedgood for perjury.  On demurrer to the indictment.  Demurrer sustained.

The indictment was in the following words:

"The grand jurors of the United States of America, chosen, selected, and sworn within and for the southern district of Alabama, in the name and by the authority of the United States of America, upon their oaths do find and present that Frances F. Bedgood, whose other name to this grand jury is unknown, late of the district aforesaid, heretofore, to-wit, on or about the thirtieth day of December, A. D. eighteen hundred and eighty-nine, and before the finding of this indictment, and within the said southern district of Alabama, in giving her testimony and making final proof of her pre-emption entry No. 1,397, for the south-east quarter of section ten, in township two north, of range nine east, in Escambia county, within said southern district of Alabama, was duly sworn by, and took his corporal oath before, N. R. LEIGH, judge and *ex officio* clerk of the probate court of said Escambia county, (he, the said N. R. LEIGH, judge and *ex officio* clerk as aforesaid, then and there

---

[1] Reported by Peter J. Hamilton, Esq., of the Mobile bar.

having sufficient and competent power and authority to administer an oath to the said Frances F. Bedgood in that behalf,) whereupon it then and there became material in making the said final proof for her pre-emption entry homestead [*sic*] as aforesaid, whether the same was made for the interest and benefit of the said Frances F. Bedgood, and not for the interest and benefit of any other person or persons whomsoever, and also whether he had made actual settlement and cultivation thereon, and also whether the said Frances F. Bedgood had resided continuously on the said land, and whether he had made a *bona fide* improvement and settlement thereon; and the said Frances F. Bedgood, being then and there sworn as aforesaid, knowingly, falsely, and willfully did substantially depose and say, among other things, (which said oath and testimony, in that behalf made, was used and filed in the local land-office of the United States at Montgomery, Alabama, and was subsequently filed in the general land-office of the United States at Washington, D. C.,) that she made the pre-emption homestead [*sic*] entry as aforesaid for her interest and benefit, and not for the interest and benefit of any other person or persons whomsoever; and that she had made actual settlement and cultivation thereon; and that she, the said Frances F. Bedgood, has resided continuously on the said land since February, 1889, up to December 30, 1889; and that she had made a *bona fide* improvement and settlement thereon; and that said improvements were of the value of fifty-four dollars. Whereas, in truth and in fact, the said Frances F. Bedgood did not make the said pre-emption homestead [*sic*] entry for her own interest and benefit; and whereas, in truth and in fact, the said Frances F. Bedgood did make said entry for the interest and benefit of other persons, whose names to this grand jury are unknown; and whereas, in truth and in fact, the said Frances F. Bedgood did not make actual settlement and cultivation thereon; and whereas, in truth and in fact, the said Frances F. Bedgood had not resided on the said land continuously since February, 1889, up to December 30, 1889; and whereas, in truth and in fact, the said Frances F. Bedgood had not then a *bona fide* improvement and settlement on the said pre-emption homestead [*sic*] entry; and that the value of her improvements was not fifty-four dollars, as stated in her said testimony and final proof aforesaid. All which statements then and there made," etc.

*M. D. Wickersham,* U. S. Atty., for the United States.

*M. A. Rabb* and *W. D. McKinstry,* for defendant.

TOULMIN, District Judge. The defendant is charged in this indictment with false swearing in making final proof of her pre-emption entry. The affidavit alleged to have been made by her is set out substantially in the indictment, and it is averred that she made oath to the affidavit before N. R. LEIGH, judge and *ex officio* clerk of the probate court of Escambia county, Ala. There is no such thing as final proof required by the statute in pre-emption entries. The proof is primary or original, and the proof required, and therefore material, is as to settlement and improvement. Sections 2259–2263, Rev. St. This is to be made agreeably to rules prescribed by the secretary of the interior. Section 2262 prescribes the oath to be taken by the pre-emptionist as a prerequisite to entitle him to the benefit of the law in such cases. The defendant was the pre-emptionist if the procedure was that of a pre-emption entry. The false affidavit and oath alleged in the indictment to have been made by him in no respect conform to the statute. Section 2262. It does not contain what is required by that statute to be sworn to, but contains statements of fact

that, so far as it provides, are wholly immaterial. The statute makes the existence of certain facts, and requires certain declarations to be made, and oath thereof by the applicant or claimant, prerequisites to securing the rights of a pre-emptionist; and oath of other facts made by him in connection therewith not required by law, however false, is not perjury. The oath must be administered in a proceeding that is valid and regular. It must be authorized by law. The false testimony must be material, and the oath must be administered by one having legal authority to administer it. 2 Bish. Crim. Law, §§ 982, 984, 991; *Silver* v. *State*, 17 Ohio, 368; *White* v. *State*, 1 Smedes & M. 156; *Gibson* v. *State*, 44 Ala. 17; *Hood* v. *State*, Id. 81; *Jacobs* v. *State*, 61 Ala. 448, 454; *Collins* v. *State*, 78 Ala. 434; *U. S.* v. *Howard*, 37 Fed. Rep. 666; *U. S.* v. *Manion*, 44 Fed. Rep. 800; *U. S.* v. *Nickerson*, 1 Spr. 232; *U. S.* v. *Curtis*, 107 U. S. 672, 2 Sup. Ct. Rep. 507; *U. S.* v. *Hall*, 131 U. S. 50, 9 Sup. Ct. Rep. 663; *State* v. *Lloyd*, 46 N. W. Rep. 898, where the supreme court of Wisconsin say that "the principle is elementary that the statute must be strictly pursued, or the affidavit is unknown to the law. What he [the defendant] has stated in the affidavit in place of what was required to be stated by the statute is as immaterial as if he had stated nothing. The perjury being assigned on what the statute does not require to be stated in the affidavit, the indictment states no crime."

The false statements alleged to have been made must have been made in a proceeding valid and regular; that is, in a proceeding or procedure authorized by law. The averments in the indictment on this subject are somewhat ambiguous. The word "final" precedes the word "proof," and the word "homestead" immediately follows the word "proof." The word "homestead" is immediately followed by the word "pre-emption," and a black mark is drawn through the word "homestead," as if to strike it out of the indictment. It is commonly known, and, therefore, judicially known, by the court, that there is "final proof" (as it is called) made in homestead entries, but not in pre-emption entries. From an inspection of the indictment, the court cannot say whether the word "final" was inadvertently inserted in the indictment, or whether the word "homestead" was inadvertently stricken out, and the word "pre-emption" inserted instead. Reasonable certainty is required as to the proceeding showing the occasion for the oath, as was said by the court in *Jacobs* v. *State*, *supra*. The indictment in this respect is at least uncertain. But, considering the procedure as that of a pre-emption entry, I think either of the other points raised by the demurrer is fatal to the indictment: (1) That the oath set out therein is extrajudicial, not authorized by law, and will not sustain an indictment for perjury; and (2) that the oath was not administered by one having legal authority to administer it. See authorities cited, and section 2262, Rev. St., and Supp. Rev. St. p. 542.

But it is claimed that the judge of probate is *ex officio* clerk of the probate court, and is therefore clerk of a court of record. The judge of the probate court is not clerk of that court. His duties are prescribed by the statute, (Code Ala. § 789;) and, among other duties, he is required

to record the proceedings of the court. He can employ a clerk. See Code Ala. § 795. But he is nowhere made or designated as such clerk. It is further contended that he is the clerk of the court of county commissioners. This is refuted by the express language of the statute, which says that he is the principal judge of that court, (Code Ala. § 819;) and the duty of recording its proceedings is expressly required of him as judge, (Code Ala. § 827.) He cannot make himself clerk by affixing the words "*ex officio*" to his signature as judge. Adding these words gives no greater authority to the officer or virtue to his acts. *Coleman* v. *State*, 63 Ala. 93.

If the act of congress of March 3, 1857, (11 St. at Large, p. 250,) is repealed, as is contended by the defendant's counsel, the judge of probate had no authority to administer the oath or take the affidavit required by law of the defendant in her pre-emption entry. If that act is still in force, he had such authority. Is said act repealed? To determine this question, we must consider the purpose and effect of the act of June 20, 1874, and the act of March 2, 1877. They are found on pages 1085, 1092, Rev. St. Section 5596, Rev. St., being a part of the act of June 20, 1874, provides that "all acts of congress passed prior to the first of December, 1873, any portion of which is embraced in any section of said revision, are hereby repealed, and the section applicable thereto shall be in force in lieu thereof." The act of March 3, 1857, is entitled "An act in addition to an act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes." It is not special in its operation, nor temporary nor local in its application. It provides for the punishment of certain crimes, etc., and is a general and permanent law, as shown by its provisions. If any portion of this act is embraced in any section of the revision of the statutes under the act of June 20, 1874, then said act of March 3, 1857, is repealed. At least three sections of the act of 1857 are in express words embraced in said revision. See sections 5341–5343, Rev. St. The fifth section of the act, and which is here invoked by the United States attorney, is not in express terms embraced in the revision; but section 5392, Rev. St., is applicable thereto,—is applicable to the crime defined and made punishable by said section 5 of the act of 1857.

In *Babcock* v. *U. S.*, 34 Fed. Rep. 873, the court says that "section 5392, Rev. St., is general in its terms, applying to all cases in which a false oath or false testimony is taken or given before any competent tribunal, officer, or person." If, as we have seen, the greater portion of the act of 1857 is embraced in the revision of 1874, and there are sections in the revision applicable to every portion of the said act, and shall be in force in lieu thereof, then, it seems to me, the repeal of the act cannot be questioned. And when we consider the fourth section of the act of March 2, 1877, as amended by the act of March 9, 1878, on page 1092, Rev. St., all doubt on the subject must be removed. In the *Babcock Case, supra,* the contention of defendant's counsel was that the act of 1857 repealed section 5392, Rev. St., "being of later date as passed by congress, and being special in its provisions as to cases before the land-

office." On this proposition the court says "that section 5392, though one of long standing, was reaffirmed in the revision of 1874, and for all questions of validity and extent may be taken as of later date than the act of 1857;" and declares that section 5392, Rev. St., is general in its terms, applying to all cases in which a false oath or false testimony is taken or given before any competent tribunal, officer, or person. The court was not called on to decide whether the act of 1857 was repealed, either impliedly by the reaffirmation of section 5392 in the revision of 1874, or expressly by the act of June 20, 1874. Indeed, the attention of the court was not called to the latter act, and there was no occasion for the court to consider it. There were 16 counts in the indictment then being considered, and the court said that 8 of them were good under section 5392, Rev. St., and that any one good count was sufficient to sustain the verdict. It is true that the court also said that section 5392 and the act of 1857 may stand and be considered together, unless there is a manifest repugnancy between their provisions, or it can be said that obviously one was intended as a substitute *pro tanto* for the other, and, considered together, the other eight counts would be good under the two statutes. It will be remembered, however, that the point then before the court was on the contention of counsel that the act of 1857 repealed section 5392, Rev. St. No reference being made to the operation and effect of the acts of 1874 and 1877, they evidently were not considered by the court.

But it is contended by the United States attorney that, if said act of 1857 is repealed, the commissioner of the general land-office has authority to designate by regulations before or by what officers such an oath may be taken, and, I understand, contends that the commissioner is authorized to designate the character of the oath and the matters to be sworn to. Under the authorities already cited, we have seen that perjury cannot be assigned on any such oath. The commissioner of the general land-office, under the direction of the secretary of the interior, is authorized to enforce and carry into execution, by appropriate regulations, the provisions of the law relating to the public lands, not otherwise specially provided for. Rev. St. § 2478. But section 2263, Rev. St., specially provides for the rules to be prescribed by the secretary of the interior himself in relation to pre-emption entries.

But, whether the commissioner or the secretary has the authority or not in these cases, there is no averment in the indictment of the existence of such regulations, or what they are. The court does not judicially know what such regulations are, or of any usage under them, and cannot know them, or decide what the effect of them is, until they are shown by proof, and such proof cannot be taken or considered on a demurrer to the indictment. If such regulations have the force of law, (which, however, is not admitted,) some reference to or averment of them should have been made in the indictment. But, in my opinion, no rule or regulation can become or have the force of law. Congress cannot, if it would, confer law-making power on the commissioner or secretary. Congress having expressly declared what officers are au-

thorized to take the affidavits and administer the oaths required by law in pre-emption entries, and having expressly prescribed what statements the affidavit of the pre-emptionist shall contain, neither the commissioner nor the secretary has the legal authority to designate other officers before whom such oaths may be taken, or to prescribe oaths to the existence of other facts than those required by the statute. The law makes the existence of certain facts and oath thereof the only prerequisites to demanding a particular right, and oath of other facts in connection therewith, however false, is not perjury. See authorities cited *supra.* If the department of the interior requires anything more to be done, or the existence of any other facts to be shown, it is only for the satisfaction of the department. It may exact from those who transact business with it compliance with the rules and regulations which it is authorized to make, but it cannot prescribe a rule which can have the force of law, and the violation of which can be punished as a crime. Authorities *supra*, especially *U. S.* v. *Manion*, 44 Fed. Rep. 800.

But, as I have said, such rules or regulations and usage thereunder as have been invoked in the argument in this case, not having been pleaded, the court cannot take cognizance of or consider on demurrer to the indictment. If, however, the court is in error as to this, and it should take judicial knowledge of such rules and regulations, then what has been said as to the authority of the commissioner of the general land-office to make them, and as to their effect when made, is pertinent. Again, if the court is in error in the opinion that the act of March 3, 1857, is repealed, then, while under that act the judge of probate has authority to administer the oath prescribed in pre-emption entries, the act does not confer on any officer of the government of the United States authority to prescribe the particular oath or affidavit. Neither does it provide that, for the willful and false taking of any oath or affidavit prescribed by any such officer, the person so taking the same shall be guilty of perjury. What it does do, as I understand it, is to declare generally by and before what officers or persons oaths, affidavits, and affirmations may be taken or made; and then provides that any such oaths, affidavits, and affirmations taken, used, or filed in any of the land-offices, as well in cases arising under any orders, regulations, or instructions issued by the commissioner of the general land-office, or other proper officer of the government of the United States, as in cases arising under the laws of the United States, if knowingly, willfully, and falsely made, shall be perjury.

It will be observed that this act does not say that the knowing, willful, and false taking of any oath that may be prescribed or required by any orders, regulations, or instructions of the commissioner of the general land-office, or other proper officer, shall be perjury; but it says that any oath taken, used, or filed in cases arising under any orders, regulations, etc., of that officer, etc. The orders, regulations, and instructions mentioned relate to cases, and not to oaths or affidavits. That is to say, all oaths on which perjury can be assigned must be

taken or used in some proceeding or procedure that is valid and regular. To make such procedure or proceeding valid, it must be recognized by the law as such. It must be one authorized by law. Now, the statute did expressly provide what the procedure was for entering land under the pre-emption, homestead, mineral lands, and timber-culture acts, and prescribed the prerequisites for demanding and securing rights under these acts. But it did not provide for or prescribe the mode of procedure or proceeding in cases of contested entries, of conflicting entries, of transferring entries, in cases for the issue of new warrants in lieu of lost warrants, and the like. Congress recognized the fact that such cases would arise, and it conferred on the land department of the government the authority to enforce and carry into execution, by appropriate regulations, the provisions of the law relating to the public lands not otherwise specially provided for. Rev. St. § 2478. On a charge of perjury the materiality of the matter sworn to is determined by the character of the proceeding in which the oath is taken and the point of inquiry involved in it, and the question of materiality is for the court to decide, in view of the law as applicable to the particular proceeding, and it must appear by the indictment. The object and effect of the fifth section of the act of March 3, 1857, as I construe and understand it, is to declare who are authorized to administer oaths and take affidavits in the particular matters therein referred to; to declare that cases arising under the orders, regulations, or instructions of the land department of the government of the United States are valid and regular proceedings; and to provide that any willfully false oaths or affidavits made or used in such proceedings, if material to the issue involved therein, shall be perjury. The indictment under consideration sets up matters, on which the perjury is assigned, that are not required by law to be sworn to, and, so far as the court is advised, not material as prerequisites to claiming a pre-emption entry; and it avers that the oath thereto was administered by one who, in the opinion of the court, did not have the authority to administer it. The indictment, therefore, charges no crime; and the demurrer to it must be sustained.