# CITY OF ST. LOUIS v. HERMAN NIEHAUS, Appellant.

### In Banc, July 1, 1911.

1. **ORDINANCES: Redundant: Not Conflicting: Mixing Water in Milk.**   An ordinance forbidding the addition of any substance to milk so as to lower or depreciate its strength, quality or. purity, is not in conflict with another ordinance which requires milk to be "free from foreign additions of any kind."   Either is available to prevent the addition of water to milk.   At most they are cumulative and indicate redundancy rather than repugnancy.

2. ——: **Milk Adulteration: Interstate Commerce: Regulations of U. S. Department.**   Courts do not take judicial notice of regulations of an administrative department of the United States Government, and therefore will not undertake to determine whether the provisions of an ordinance forbidding the sale of milk mixed with water, shipped into this State from another State, are in conflict with standards and regulations of the Department of Agriculture adopted and applied in regulating commerce in milk among the states in pursuance of the Pure Food Act enacted by Congress, unless such regulations are put in evidence at the trial.

3. ——: ——: ——: ——: **Not Applicable.**   But even if the court were to take judicial notice of the existence of such regulations it would be in no position to determine whether or not the ordinance is in conflict therewith, where the facts are so

St. Louis v. Niehaus.

scantily developed that it cannot be said with any degree of certainty whether or not the milk was sold in "the original package" in which it was shipped from the other State into this, or by whom it was purchased, who was its shipper, who was its consignee, how it was shipped, whether by bulk, can or bottle.

4. ———: ———: ———: **Not Raised at the Trial.** The court will not decide whether or not an ordinance is in violation of a law of Congress regulating commerce among the states, or whether in conflict with regulations of an administrative department of the Government adopted in pursuance thereto, unless the question was raised at the trial, and decided by the court adversely to appellant.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Benjamin J. Klene*, Judge.

AFFIRMED.

*Wm. L. Bohnenkamp* and *E. F. Stone* for appellant.

(1)  Said ordinance is void as being in conflict with provisions of the Act of Congress, approved June 30, 1906, known as the "Pure Food and Drug Act," and the standards and regulations of the Department of Agriculture of the United States used and applied in regulating commerce between the states. The evidence shows that said milk was shipped to defendant from Illinois and hence was within the laws of interstate commerce, relative to food products. State v. Railroad, 212 Mo. 680; Cooley's Const. Lim. (7 Ed.) p. 856; Railroad v. Alabama, 128 U. S. 96; Railroad v. Husen, 95 U. S. 465; State v. Addington, 77 Mo. 116; State v. Railroad, 212 Mo. 680. "In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect." Collins v. New Hampshire, 171 U. S. 29; Morgan v. Louisiana, 118 U. S. 455; People v. Hawkins, 157 N. Y. 15; Buffalo v. Reavy, 55 N. Y. Supp. 792.  And the ordinance is unconstitutional and void because the public power of the city cannot be allowed by regulation and supervision to amount to pro-

hibition of the sale of lawful subjects of interstate commerce. Collins v. New Hampshire, 171 U. S. 33; Ex parte Scott, 66 Fed. 45; Stubbs v. People, 40 Colo. 414; In re Worthen, 58 Fed. 467. An article having been recognized by an act of Congress as a proper subject of traffic and exportation and importation, is a proper subject of commerce among the states, and a state cannot, directly or indirectly, wholly exclude it from the state. Schollenberger v. Penn., 171 U. S. 1; Minnesota v. Barber, 136 U. S. 313; Scott v. Donald, 165 U. S. 581; Leisy v. Hardin, 135 U. S. 125. And this is true whether the state claims to be acting under its police power, or under its power of taxation. Walton v. Missouri, 91 U. S. 275; Cook v. Penn., 97 U. S. 566; State v. Brophy, 14 S. D. 119. And one state, under the commerce clause of the Constitution, has no right to prohibit the importation into that state of an article of commerce for sale simply because it may have, by act of its legislature prohibited the sale of such article by its own citizens. Buffalo v. Reavy, 55 N. Y. Supp. 795. That cows' milk has been, by Congress, "affirmatively pronounced" an article of food and a proper subject of commerce between the States and under the rules and regulations made by way of definitions and standards, there can be no doubt, especially "so far as such standards might be a basis of executive judgment to guide executive action in the enforcement of existing laws." June 26, 1907. Circular 19, Dept. of Ag., p. 6. Report Com. on Food Standards of the Assn. of Off. Agri. Chem. October, 1907. "Food and Drugs Act," June 30, 1906. And that the United States has recognized milk of a standard, without regard to the percentage of "ash," as being a food product in commerce there can be no doubt, for it fixed said standard at "8.5 non-fatty solids and 3.25 per cent butter-fat, and skimmed milk at 9.25 total solids." Therein no ash element is considered at all in its percentage. This alone renders said ordinance provision void, for it requires a

specific percentage element of the standard not required by the United States and hence interferes with, and prohibits, the shipping of milk into the state from other states, that is recognized as a product of commerce by the United States as a "sound article." Minnesota v. Barber, 136 U. S. 313; Schollenberger v. Penn., 171 U. S. 12.

*Lambert E. Walther* and *A. H. Roudebush* for respondent.

It was for the defendant below to establish sufficient facts to bring his property within the effects of interstate commerce laws; and he failed to do so. Savings Inst. v. Jacoby, 97 Mo. 627. In order for a party to raise a question as to the constitutionality of an act, he must direct the court's attention to the particular section of the Constitution alleged to have been contravened. Hulett v. Railroad, 145 Mo. 35; Kirkwood v. Meramec Co., 160 Mo. 111; St. Joseph v. Ins. Co., 183 Mo. 1; Ash v. Independence, 169 Mo. 77; Excelsior Springs v. Trust Co., 188 Mo. 132; State to use v. Lumber Co., 170 Mo. 7; Stave Co. v. Butler Co., 166 U. S. 648. The question of invalidity not having been brought to the attention of the trial court can not be raised for the first time on appeal. Curtwright v. Crow, 44 Mo. App. 563; Cauble v. Craig, 94 Mo. App. 675; Vaughan v. Railroad, 145 Mo. 57; James v. Assn., 148 Mo. 1; Keller v. Ins. Co., 95 Mo. App. 627; Fruit Co. v. McKinney, 103 Mo. App. 304. The act of Congress, approved June 30, 1906, does not establish standards for milk, but does prohibit adulterated foods and in the same language as the ordinance. Hence there is no conflict. Circular No. 19 of the U. S. Department of Agriculture as to milk standards was not offered in evidence below and will not be judicially noticed on appeal. Nagle v. U. S., 145 Fed. 306; The E. A. Packer, 140 U. S. 360; U. S. v. Bedgood, 49 Fed. 54; Hensley v. Tarpey, 7 Cal. 288; Moore v. Worthington, 63 Ky. 307. The ordinance is a

reasonable and valid police regulation notwithstanding Federal regulation of the subject-matter. 17 Am. and Eng. Ency. Law (2 Ed.), 59; Railroad v. Haber, 169 U. S. 613; Sinnat v. Davenport, 22 How. (U. S.) 227; State v. Randolph, 1 Mo. App. 17; State v. Addington, 12 Mo. App. 214, 77 Mo. 116.

LAMM, J.—The complaint charged that on the 2d day of July, 1909, at a named place in St. Louis, defendant had in his possession with intent to sell and offer and expose for sale skim milk, adulterated, in that a substance, water, had been mixed with it so as to lower and depreciate its strength and quality, contrary to the ordinance in such case made and provided.

This is one of eight companion cases (Ameln's, Kellman's, Meyer's, Kruempeler's, Schulte's, Scheer's, Jud's and the instant case—all handed down at this delivery and reported in this Report, and in 235 Mo.), testing St. Louis milk ordinances. In some of them are common questions. In so far as that is so, when such question has been once ruled it has not been reconsidered, but reference has been made to the principal case to avoid duplicating exposition—the same counsel representing the city and the several defendants respectively in all the cases, and all of them being consolidated, argued together and heard practically as one case. We shall follow that plan in this case.

In one of the companion cases, Ameln's, those sections of ordinance 24297, material here, are set forth, as well as sections 449 and 505 of the Revised Code of St. Louis. [See that case for their terms.]

At the trial the city read section 2 of the ordinance into the record. Defendant read into it said sections 499 and 505 of the Revised Code of St. Louis of 1907 (Woerner's).

The oral testimony follows:

The city put on the stand Roeder, a milk inspector, an attache of the city chemist's office, who testified

that at the time and place charged in the complaint he took a sample of skim milk from defendant's wagon and put it in the hands of an assistant city chemist, Fitz-williams. Further, he, testified "defendant's milk is all shipped in the city by railway." The chemist, Fitzwilliams, testified that he analyzed the sample given him by Roeder "and found it contained added water, the effect of which lowers and depreciates its quality and value." Such was the city's case.

At this point defendant asked a mandatory instruction to acquit. Failing in getting that instruction, to sustain the issues on his own behalf, he offered (in addition to said sections 499 and 505 of the Revised Code of St. Louis) oral testimony from Niehaus in substance as follows: He did not handle his own milk. He forbade his drivers doing anything wrong. He had never before been prosecuted for adulterating milk. "He did not produce the milk and all of his milk was purchased in and shipped from the State of Illinois."

(a). Among contentions below and here is one that the prosecution should have been under section 499 of said Revised Code, instead of under ordinance 24297. That contention in all its phases, so far as relates to section 499, was ruled against defendant in the Ameln case, which see. Point IV .of defendant's brief relates to that contention and may be put aside.

(b). Another contention below and here is one to the effect that ordinance 24297 is void because in conflict with an act of the Legislature (Laws of 1909, p. 118), the same being section 10 of an act relating to agriculture and creating a bureau of dairying. [Laws of 1909, p. 113.] Said section 10 is now section 640, Revised Statutes 1909. That contention was ruled against defendant in the third paragraph of the Ameln case. (*Quod vide.*) Point III of defendant's brief relates to that contention and may be put aside.

(c). In point V of his brief defendant asserts that if guilty at all he is guilty of violating section 505

of the Revised Code of St. Louis. That section, as said, read in evidence, is set forth in Ameln's case, but that case did not break on the point. However, in the companion case (Kellman's, reported at page 687, 235 Mo. which see), it appears that the identical section 505, was "struck out" and repealed by a later ordinance 24582, approved October 23, 1909. The Kellman case rode off on the validity of that very repeal. However, this case was tried in the court of criminal correction in September, 1909, before that repeal, so that the point is left for consideration in this particular case although it could not again arise.

Section 505 establishes a standard for skim milk in total solids, butter fat, specific gravity, freedom "from foreign additions of any kind," and any evidence of decomposition and which is transported and delivered at a temperature provided elsewhere for sweet milk. It does not appear what the constituent elements and properties of this milk were with reference to those standard requirements. However, "water" might be a "foreign addition." The proposition that the prosecution should have been under that ordinance is somewhat dark. As preserved in the record, section 505 provides no punishment and winds up with the phrase "may be lawfully sold, under the following regulations." What those regulations are, we do not know. We think there is no substantial merit in the point. Counsel do not develop it and we construe it as made more by way of parenthesis than otherwise. To all intents and purposes it falls within and is disposed of adversely to defendant by the reasoning in the series of companion cases already decided and to which reference has been made. The two ordinances do not conflict. At the worst possible view they seem cumulative and indicate redundancy rather than repugnancy.

The point is ruled against defendant.

With these subsidiary questions at rest, we come

to the remaining proposition in the case—one emphasized by a scholarly and industrious elaboration, to-wit:

(d). Counsel, assuming the milk in question at the time and place in question was the subject-matter of interstate commerce and as such came within the purview of the provisions of the Federal law known as "The Pure Food and Drug Act," and the standards and regulations of the United States Department of Agriculture, adopted and applied in regulating commerce in milk between the states, say the ordinance is in conflict with that Federal act and the standards and regulations of that department, hence is void.

We rule the point against defendant—putting our ruling on the following propositions:

(1) In the first place, in making the point counsel assume as essential to it that we will judicially notice milk standards prescribed by the United States Department of Agriculture, and thereby work out a conflict.

In the Kruempeler case (reported at page 710, 235 Mo.), we declined to take judicial notice of milk standards so prescribed. On argument, a pamphlet was left with the files which is said to establish those standards, but it was not introduced in evidence and, under like circumstances, we ruled in the Kruempeler case we would not notice it. The field of judicial notice is a large one and has often been partly explored. For our purposes we may safely rest on some general and well-recognized rules. For instance: The rule is to not judicially notice the laws of a sister state or the ordinances of a city or the regulations of local boards and councils. [Sec. 6b, 1 Green'f on Ev., 16 Ed.] Why should that rule not apply here? Are rules of an administrative department of more consequence, or publicity, or more likely to be known as authentic than the laws of a sister state, or the general ordinances of one of our great cities? The doctrine of judicial notice, in so far as it relates to regulations of executive

departments of the United States government, seems to be that they are "sometimes, but not *usually* noticed" (*Ibid*), and we think that general doctrine sound. It avails nothing that there are exceptions to it called in play when peculiar facts put the case outside the reason of the rule. There are respectable authorities back of our holding—*ex gr.*: Nagle v. U. S., 145 Fed. l. c. 306; The E. A. Packer, 140 U. S. l. c. 367-8; U. S. v. Bedgood, 49 Fed. 54; Hensley v. Tarpey, 7 Cal. 288; Moore v. Worthington, 63 Ky. l. c. 308-9; The Clara, 5 C. C. A. 390; Com. v. Crane, 158 Mass. 218.

We are cited by defendant's counsel in their reply brief to Campbell v. Wood, 116 Mo. 196, as holding a contrary doctrine; but, read with care, that case does not run *quatuor pedibus*. It dealt with an old land grant and survey. On the documents were certain peculiar marks. The question was: What did those marks mean? This court felt "at liberty" to take judicial notice of instructions issued by the Surveyor-General for the States of Illinois and Missouri to deputy surveyors as bearing on those peculiar marks made by deputy surveyors acting under those instructions.

The doctrine of judicial notice is not a hard and fast one. It is modified by judicial discretion. In this view it becomes apparent at once that such discretion in the Campbell case was properly exercised; for the court put the matter on "the circumstances connected with the case," citing with approval some observations made by BROWN, J., in Hunter v. Railroad, 116 N. Y. 615, in favor of taking judicial notice of the size and height of an average man, standing or sitting. Says BROWN, J., by way of philosophical generalization, in leading up to his foregoing concrete ruling:

"Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends on the nature of the subject, the issue involved and the apparent justice of the case.

"The rule that permits a court to do so is of

practical value in the law of appeal, where the evidence is clearly insufficient to support the judgment. In such case judicial notice may be taken of facts which are a part of the general knowledge of the country, and which are generally known and have been duly authenticated in repositories of facts open to all, and especially so of facts of official, scientific or historical character."

(2). In the next place, the facts are darkly developed and it would be a leap in the dark for us to acquit defendant on the theory his milk was within the protection of the Federal law and Constitution relating to interstate commerce. There comes a time in every shipment of goods into the United States from a foreign country, or from one state to another, when those goods are released from the protection of interstate commerce or importation acts and become subject to state taxation and state police regulation by being merged into the body of the property within the state, and impressed with the character of goods employed in local traffic. There is much learning on the question, and this case does not call for its exposition. In passing, we refer to one feature, viz., "*the original package*" feature, which is allowed some controlling significance in leading cases. Take Canton v. McDaniel, 188 Mo. 207, for example.

Turning to the record we see there was proof from the inspector that defendant's milk was brought into the city by "railway." That evidence was supplemented by defendant's to the effect "that all of his milk was purchased in and shipped from the State of Illinois." Such is the scant record. By whom was it purchased? Who was the shipper? Who was the consignee? How was it shipped, by bulk, can or bottle? Was it stored, its bulk broken and thus made ready to be dealt out to buyers or was it still in the original package and was the act of delivery to the customer but a continuation of

236 Sup.—2

the shipment? Obviously, the facts showing this milk came within the protection of interstate commerce, if existent, do not sufficiently appear. The milk was on a retail wagon in the streets of St. Louis, in charge of an agent then and there about the business of selling and delivering it to Missouri customers by the small at a price named. If defendant claims a privilege as a dealer in interstate milk not allowed to his rivals, dealing in Missouri milk, to sell added water in his milk, he must do so without the grace or hazard of a *guess* upon the part of an appellate court on the facts bringing him within that privilege.

(3). In the next place, we are not satisfied that the question was properly lodged below and decided by the trial court. Without going into detail, the motions filed and overruled, the instruction asked, and the exceptions saved below do not explicitly raise the proposition. Accordingly, we think it not here for review.

The premises all considered, the judgment is affirmed. All concur, except *Valliant, C. J.*