STATE OF MISSOURI at the relation of F. T. O'DELL CONSTRUCTION COMPANY, a Corporation, and THE FIDELITY & CASUALTY COMPANY OF NEW YORK, a Corporation, Relators, v. JEFFERSON D. HOSTETTER, WILLIAM DEE BECKER and EDWARD J. McCULLEN, Judges of the St. Louis Court of Appeals.—104 S. W. (2d) 671.

Division One, May 5, 1937.

*George A. Hodgman* and *Luke & Cunliff* for relators.

*Roy Hamlin* and *Ben Ely* for respondents.

**1158**

FRANK, P. J.—Certiorari to quash an opinion of the St. Louis Court of Appeals in the case of Velma Buhrkuhl, Dependent of Thomas Buhrkuhl, Deceased Employee, Appellant, v. F. T. O'Dell Construction Company, Employer, and The Fidelity & Casualty Company of New York, Insurer, Respondents.

The case originated before the Workmen's Compensation Commission. Claimant and deceased were husband and wife. Deceased was employed on a road construction job in Ralls County. On August 11, 1932, he was struck by lightning and killed. The award of the commission was in favor of claimant. The circuit court set the award aside. The Court of Appeals reversed the judgment of the circuit court and remanded the cause with directions to that court to enter up a new judgment affirming the award of the commission. The pertinent parts of the opinion of the Court of Appeals read as follows:

"At the time in question the work was being carried on in the vicinity of the farm of Monroe Asher, and in fact at a point where the right of way for the road ran within seven feet of the corner of Asher's barn. During the two weeks that the work had been in progress the Asher place had been looked upon as a 'sort of headquarters' for the construction project. Those of the men, including the foreman, who did not live in the neighborhood, customarily ate and slept in Asher's house; all the men watered their teams at a well in his barn lot; and on two occasions at least when rains came up during the working hours, they and their teams were shown to have taken shelter in his barn or outbuildings.

"Shortly after the lunch hour on August 11, 1932, a heavy storm came up accompanied by a great amount of rain, lightning, thunder, and wind. Inasmuch as the force of the storm was evidently too great for work to be done during its progress, the foreman told his men to 'go on and unhitch and hunt your shelter,' whereupon they did

unhitch their teams and at once proceeded to take shelter in Asher's barn and other outbuildings as they had done under similar circumstances on the day before. It appears that the Asher barn and outbuildings constituted the only available shelter in the neighborhood, and it is a significant fact that on both days the foreman accompanied his men inside to seek protection from the elements. The significance of all this is that while there is no claim that the foreman told his men in so many words that they should take shelter on the Asher premises, yet it was so understood by all of them when he gave the order, and the legal situation is therefore the same as though the foreman had specifically told the deceased to go into the barn where he was when he was killed.

"It is also a material fact upon the issue of whether the accident might be said to have occurred during the course of the employment that when the men were told to unhitch and hunt shelter, they were not dismissed from their employment for the day, but were expected to leave their shelter and return to their respective duties as soon as the rain should cease falling.

"Upon the order to unhitch, some few of the men took shelter in a granary or shed, but four of them, including the deceased and the foreman, went inside the barn with their teams to await the end of the storm. The testimony shows that aside from the four men, there were sixteen horses inside the barn, in which, in addition, Asher was housing a tractor and a plow. It appears also that the barn had the usual loft in which some 660 bales of hay were stored.

"Whatever may have been its importance upon the question of her right to compensation, the dependent undertook to lay considerable stress on the fact that the men and horses were closely crowded together in the barn, and that both men and horses were dripping wet from the rain. At any rate, while huddled together in the barn in such a fashion, a bolt of lightning struck the barn killing the deceased and six of the horses, but fortunately inflicting no substantial injury upon any other man or beast. The tractor was not damaged by the lightning, and was removed from the barn before the same was burned to the ground. The plow, however, had apparently been struck by the lightning, and was burned beyond all recognition.

"So far as the lay of the land is concerned, the Asher place is in the open country, with the nearest hill an eighth of a mile away, and the nearest woods a mile distant. In the immediate vicinity, in addition to the barn in which the deceased was killed, there was the farmhouse, together with a shed or granary. There was evidence to show that the three buildings in question sat upon ground which was slightly elevated about the surrounding terrain, and that the barn, which was about 25 feet in height, was the tallest of the three buildings in the group. It was also shown that while the storm was quite a

general one, with flashes of lightning in evidence in all directions, yet the Asher barn was the only object struck during the storm for many miles around.

"The dependent' predicates her right to compensation upon the theory that the act of the deceased in seeking shelter from the storm (and particularly so at his foreman's direction), did not serve to interrupt the course of his employment, and that his death by being struck by lightning was by accident arising out of his employment, inasmuch as his presence in the barn, under all the circumstances shown in evidence, intensified and magnified the risk to which he was subjected from the danger of the elements over and above that to which he would otherwise have reasonably been exposed but for his employment. This is indeed a generally recognized doctrine of the law of compensation, and if it may be said that there was sufficient competent evidence adduced to warrant the belief that the employment of the deceased did result in his excessive exposure to the common risk from lightning, then the award of the commission in favor of the dependent should obviously be affirmed. [Van Kirk v. Hume-Sinclair Coal Mining Co., 226 Mo. App. 1137, 49 S. W. (2d) 631.]

"To this the employer and insurer counter with the suggestion that the stroke of lightning which killed the deceased was a danger common to the neighborhood and in no sense peculiar to the employment, and that the death of the deceased was therefore the direct result of an act of God so as to exclude the dependent's right to compensation therefor.

"As regards the question of the legal sufficiency of such a defense, it suffices to say that the defense of act of God applies no less to a compensation case than to the ordinary action at common law for damages, which is to say in this case, as we have indeed already pointed out, that if the death of the deceased was attributable solely to the injurious effects of the forces of nature unmixed with any peculiar risk to which the employment gave rise, then there could be no liability to the dependent for compensation, but that if the employment of the deceased did subject him to a risk and hazard from such forces of nature over and above that to which the general public was exposed, or, to put it another way, if the act of God concurred and collaborated with conditions peculiarly attendant upon the employment to bring about the death, then the dependent is clearly entitled to recover the death benefit as against the defense here interposed. [Brooks v. Greenberg (Mo. App.), 67 S. W. (2d) 823.]

"As we understand the case, the fact that the accident at least occurred in the course of the employment of the deceased does not appear to be seriously disputed, if in fact it is disputed at all. The matter of seeking shelter from the fury of the storm was one essential to the personal comforts and necessities of the deceased while

generally engaged at his employment, and is therefore to be deemed incidental to the employment and not of such a character as to have broken or interrupted the continuity of the same. [Consolidated Pipe Line Co. v. Mahon, 152 Okla. 72, 3 Pac. (2d) 844; Van Kirk v. Hume-Sinclair Coal Mining Co., supra; Gillmore v. Ring Construction Co., 227 Mo. App. 1217, 61 S. W. (2d) 764.]

"So the decisive question in the case is that of whether the death of the deceased was by accident arising out of his employment, depending, of course, upon whether or not there was sufficient competent evidence to show that his employment had brought about an excessive exposure to the lightning which killed him. Of this we think there can be no serious doubt.

"Here the trouble arises purely over the question of our right to take judicial notice of the fact, if it is a fact, that the barn in which the deceased took shelter was, by reason of its location and construction, an object of such a character as to render it more likely to be struck by lightning than the ordinary object in that vicinity. We say the question is one of judicial notice, and so it is, since the dependent introduced not a word of expert evidence regarding the characteristics and propensities of lightning or atmospheric electricity, depending wholly instead upon certain magazine articles dealing with the subject, which were introduced in evidence at the close of the hearing before the referee, but which, upon objection by the employer and insurer, were stricken from the record upon the review before the full commission.

"Now the doctrine of judicial notice is not a hard and fast one, but is modified by a judicial discretion which leaves it generally to the court to determine for itself whether it shall exercise the power in a given instance, depending primarily upon the nature of the subject, the issues involved, and the apparent justice of the case. Nor, if the court elects to exercise its prerogative of taking judicial notice of a fact material to the issues, is it in all events limited to a matter actually within the personal knowledge of the judge. To the contrary, it may take judicial notice of any and all facts which are a part of the general knowledge of the country, and which are generally known and accepted and have been duly authenticated in repositories of fact open to all, and especially so of facts of official, scientific, or historical character as the same may be set down and recorded in encyclopedias, dictionaries, and the like to which the court may turn to verify its information or refresh its recollection. [City of St. Louis v. Niehaus, 236 Mo. 8, 17, 139 S. W. 450; Consolidated Pipe Line Co. v. Mahon, supra; Van Kirk v. Hume-Sinclair Coal Mining Co., supra; 23 C. J. 169.]

"Of course, no court would be so bold as to assume to take judicial notice of all the varied manifestations of electricity, whether at-

mospheric or otherwise, but there are nevertheless certain facts and peculiarities about it which are definitely accepted and well recognized. For instance, in Vol. 17, The Encyclopedia Americana, pages 432-434, where the subject discussed is that of 'Lightning and Lightning-rods,' the text makes note of the fact that fatalities from lightning are everywhere increased by the tendency of persons to seek shelter in or under objects such as barns, trees, and the like; that isolated buildings, as in the case of farm buildings, are in five times as great danger from lightning as buildings grouped together in city blocks; that because of their comparative isolation, farm buildings are generally regarded as a poor insurance risk; that in the matter of statistics, barns seem to be a peculiar object of the destructive force of lightning; and that the highest point in a building or group of buildings is the most obvious target for the lightning's stroke.''

Relators contend that the opinion is in conflict with prior controlling decisions of this court which hold that there must be a causal connection between the conditions under which the work is required to be performed and the resulting injury. In support of this contention the following cases are cited. [Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128; Cassidy v. Eternit, 326 Mo. 342, 32 S. W. (2d) 75; Brauch v. Skinner Bros. Mfg. Co., 330 Mo. 760, 51 S. W. (2d) 27; Crutcher v. Curtiss-Robertson, 331 Mo. 169, 52 S. W. (2d) 1019; Phillips v. Air Reduction Co., 337 Mo. 587, 85 S. W. (2d) 551; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909.]

The holding in the cited cases that there must be a causal connection shown between the conditions under which the work is required to, be performed and the resulting injury is but another way of saying that in such cases the burden is on the claimant to show that the accident which caused the injury or death arose out of the employment. The opinion of the Court of Appeals recognizes and declares this principle of law in the following language:

''So the decisive question in the case is that of whether the death of deceased was by accident arising out of his employment, depending, of course, upon whether or not there was sufficient competent evidence to show that his employment had brought about an excessive exposure to the lightning which killed him.''

Since the opinion holds that the decisive question in the case is whether or not the death of deceased was by accident arising out of his employment, there is no conflict between it and the cited cases which hold the same thing on that question. Neither can it be said that the Court of Appeals reached a different conclusion from that reached in the cited cases on the same or a similar state of facts, be-

cause the facts in neither of the cited cases are the same or similar to those in the case decided by the Court of Appeals.

The Court of Appeals recognized the well-established doctrine that the employer would not be liable to claimant if her husband's death was caused solely by lightning, but held that if deceased's employment brought about an excessive exposure to the lightning which killed him, then the employer would be liable. Relators do not complain of this latter declaration of law or contend that it conflicts with any prior controlling decisions of this court. Their contention is that there was no evidence tending to show that deceased's employment brought about an excessive exposure to lightning or increased the risk of his being struck thereby and killed.

It appears from the opinion that there was no expert evidence introduced regarding the characteristics and propensities of lightning or atmospheric electricity, or that lightning was more likely to strike some places or objects than others, but the Court of Appeals took judicial notice of the fact that the barn in which deceased took shelter from the ravages of the storm was, by reason of its location and construction, an object of such a character as to render it more likely to be struck by lightning than the ordinary objects in that vicinity. Relators contend that the action of the court in taking judicial notice of that fact, and its references to the encyclopedia to determine how, why, when and where lightning would strike are in direct conflict with the following prior controlling decisions of this court upon similar facts. [Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. (2d) 128; City of St. Louis v. Niehaus, 236 Mo. 8, 139 S. W. 450; Laudwig v. Central Missouri Power & Light Co., 324 Mo. 676, 24 S. W. (2d) 625; Wolf v. Mallinckrodt Chemical Works, 336 Mo. 746, 81 S. W. (2d) 323; Jackson v. Butler, 249 Mo. 342, 155 S. W. 1071; Timson v. Manufacturers' Coal & Coke Co., 220 Mo. 580, 119 S. W. 565.]

In the City of St. Louis v. Niehaus, supra, upon which relators rely, this court had the following to say concerning judicial notice.

"Courts are not bound to take judicial notice of matters of fact. Whether they will do so or not depends upon the nature of the subject, the issue involved, and the apparent justice of the case. The rule that permits a court to do so is of practical value in the law of appeal, where the evidence is clearly insufficient to support the judgment. In such case judicial notice may be taken of facts which are a part of the general knowledge of the country, and which are generally known and have been duly authenticated in repositories of facts open to all, and especially so of facts of official, scientific or historical character."

Note what the Court of Appeals said on this question. It follows:

". . . it may take judicial notice of any and all facts which

are a part of the general knowledge of the country, and which are generally known and accepted and have been duly authenticated in repositories of fact open to all, and especially so of facts of official, scientific or historical character as the same may be set down and recorded in encyclopedias, dictionaries and the like to which the court may turn to verify its information or refresh its recollection. [City of St. Louis v. Niehaus, 236 Mo. 8, 17, 139, S. W. 450; Consolidated Pipe Line Co. v. Mahon, 152 Okla. 72, 3 Pac. (2d) 844; Van Kirk v. Hume-Sinclair Coal & Mining Co., 226 Mo. App. 1137, 49 S. W. (2d) 631; 23 C. J. 169.]''

A comparison of our holding in the Niehaus case with the holding of the Court of Appeals will show that they are not only not in conflict but are identical except as to what the Court of Appeals said about the right of a court to turn to an encyclopedia, dictionary or the like to verify its recollection or refresh its memory. We have never said that a court could not verify its information or refresh its recollection by reference to such publications. On the contrary we have cited such publications in support of conclusions reached. In one of the cases cited by relators, Timson v. Manufacturers' Coal & Coke Co., supra, the question to be determined was whether or not the court should take judicial notice that all coal mines generated gas. In the discussion and determination of that question the writer of the principal opinion cited, Encyclopedia Britannica and Encyclopedia Americana.

It is true that the Timson case held, and correctly so, that courts should not take judicial notice of facts merely because they could be ascertained by reference to dictionaries, encyclopedias and other publications, but this holding is not in conflict with the holding of the Court of Appeals that a court may turn to an encyclopedia or dictionary to verify its information or refresh its recollection as to facts of general knowledge there recorded, before making its ruling. There is a wide difference between a court verifying its information and refreshing its recollection as to facts of general knowledge, by reference to certain publications, and a court taking judicial notice of a fact merely because it could be found in such publications. Wigmore on Evidence (2 Ed.), section 2565, says:

''Finally, there is a process of investigation by the judge prior to a ruling of judicial notice upon a question of fact determinable by a jury. For example, when the court is asked to dispense the party from evidencing the fact that the Mississippi joins the Missouri about the City of St. Louis, or that the first of January, 1904, fell on Friday, i. e., to take judicial notice of these facts, he may resort to a map or calendar, before making the ruling.''

Neither of the other cases cited by relators come any nearer showing a conflict than does the Timson case. None of them declare a

principle of law contrary to that declared by the Court of Appeals, and neither of them reach a conclusion different from that reached by the Court of Appeals on the same or a similar state of facts.

It is contended that the Court of Appeals by comparing dangers from lightning existing in the country with dangers existing in the city, brought its opinion in conflict with Delille v. Holton- Seelye Co., 334 Mo. 464, 66 S. W. (2d) 834, 836, and Kripplaben v. Joseph Greenspons Sons, 50 S. W. (2d) 752.

The opinion quotes from Vol. 17, The Encyclopedia Americana, pages 432-434, the following:

"Fatalities from lightning are everywhere increased by the tendency of persons to seek shelter in or under objects such as barns, trees and the like; that isolated buildings such as farm buildings, are in five times as great danger from lightning as buildings grouped together in city blocks."

The Court of Appeals did not find for claimant because the danger from lightning in the country was greater than in the city. The gist of its holding is that deceased's presence in the barn in the course of his employment, under the circumstances shown, brought about an excessive exposure to the lightning which killed him.

This is clearly shown by the concluding paragraph of the opinion which reads as follows:

"Bearing in mind the facts of this case regarding the isolated character of the Asher buildings and the superior height of the barn as compared with that of the shed and farmhouse, and considering those facts in the light of what is known about the common characteristics of lightning, it is at once evident, we think, that when the deceased took shelter in the barn he became exposed to a risk and danger from lightning greater than that confronting the neighborhood generally."

The article from the encyclopedia was cited by way of illustration or argument in support of the conclusion which the court reached on the facts of the particular case it was reviewing, to the effect that the barn was more likely to be struck by lightning than other objects or places in that vicinity. We are concerned on certiorari with rulings actually made and not with illustrations and arguments in support of such rulings. The cases cited by relators do not support the contention made. These cases simply hold that if an employee, because of his duties, is exposed to a particular danger from the elements—a danger that is greater than that to which other persons in the community are subjected—an injury resulting from such exposure is compensable. The Court of Appeals announced exactly the same principle of law.

We do not hold whether the Court of Appeals was right or wrong in taking judicial notice of the fact that deceased's presence in the barn in the course of his employment brought about an excessive

exposure to the lightning which struck and killed him. What we do hold is that the Court of Appeals' declaration of the character of facts of which a court may take judicial notice is not in conflict with anything we have said on that subject. If the Court of Appeals was wrong in taking judicial notice of the facts in question, that was a misapplication of a correct principle of law to the facts, which cannot be reached and corrected on certiorari unless we have made a different application of this principle of law to the same or similar state of facts. [State ex rel. Hauck Bakery Co. v. Haid et al., Judges, 333 Mo. 76, 62 S. W. (2d) 400, 402.]

Our conclusion is that no conflict was shown and we have found none. It follows, therefore, that our writ was improvidently issued and should be quashed. It is so ordered.

All concur, except *Douglas, J.*, not voting because not a member of the court when cause was submitted.