KAMO ELECTRIC COOPERATIVE, Inc.,
Appellant,

v.

Walter E. DICKE and Mary Dicke et al.,
Respondents.

No. 22394.

Kansas City Court of Appeals.
Missouri.

Dec. 3, 1956.

A. J. Anderson, Anderson & Anderson, Harrisonville, Jack L. Rorschach, Vinita, Okl., Charles E. Ginn, Ginn & Moore, Aurora, for appellant.

L. M. Crouch, Jr., Robert W. Spangler, Harrisonville, Lyman J. Bishop, St. Louis, for respondents.

DEW, Presiding Judge.

The appellant, as plaintiff, brought this action to condemn an easement for a right-of-way on and across the farm property of the defendants for purposes of an electric transmission line. To a report of the commissioners appointed by the Court, awarding defendants $2,250 damages in the proceedings, both of the parties herein filed exceptions, and upon trial of the same before a jury in the Circuit Court of Cass County, a verdict was returned in favor of the defendants for the sum of $3,000, from which the plaintiff has appealed.

It is agreed that the defendants are entitled to recover, if at all, the difference between the reasonable market value of their farm property in question immediately before the taking of the easement and immediately thereafter. The main issue on this appeal pertains to the elements of damages to be considered in the determination of those values and the sufficiency of proof thereof. The plaintiff contends that by giving Instruction 2 requested by the defendants, the Court, without evidence to justify it, erroneously permitted the jury to consider whether there existed certain special risks and hazards peculiar to the defendants' property, by reason of the construction, maintenance and operation of the transmission line, and that the instruction is too general, indefinite and confusing. Plaintiff also complains of the Court's refusal of its Instruction 14, which would have withdrawn from the jury's consideration the elements of danger or hazard submitted in Instruction 2.

It was stipulated that defendants received no special benefits from the appropriation of the right-of-way, and that plaintiff had a right to remove any trees that interfered with the construction, operation or maintenance of the line.

The evidence was that the defendants' farm consisted of about 427 acres located in Cass County, Missouri, about a mile and a half west of the City of Harrisonville. It was purchased by the defendants in 1952 although the deeds were not delivered until a year or so later. The date of the appropriation of the easement was June 16, 1954. The farm had been used for dairy, pasturage and agricultural purposes and on it were also extensive areas of timber and undergrowth. The defendants had cleared 110 acres and had moved onto the premises a house, and had other improvements. Situated in the tract was an area of about 8 acres shaded by trees and on parts of which

dams had been so constructed across a small branch as to create an upper lake or settling basin which drained into a larger lake to the west of an average depth of about 15 feet. Defendants had stocked these lakes with bass and bluegill fish and the smaller lake only had been fished at the time of trial. There was a boat dock on the larger lake and a shelter house nearby. The lakes and surrounding trees and picnic grounds constituted a very beautiful recreational spot. Prior to the appropriation of the easement plaintiff had spent $21,751 on improving the farm property. About 200 acres were in cultivation and 90 acres more were tillable; about 130 acres still remained in brush, timber and undergrowth.

Before the appropriation of the easement in question there was already an REA electric line which entered the farm on the south side and crossed the small lake and thence northeast to the house. This line carried 7,200 volts of electricity.

The line constructed by the plaintiff, according to the petition and proof, was 3,628 feet in length and entered the farm on the south on a 100 foot right-of-way. It ran in a northwesterly direction across the small lake and spillway and along the north bank of the larger lake, the easement, however, extending out into the latter body of water; thence the line proceeded northwesterly to the west line of the property. Plaintiff's line had a minimum clearance of 21 feet from the ground, carried 69,000 volts of electricity, and crossed over the REA line, clearing it by two or three feet. The line was a single pole construction, on which were installed crossarms and insulators carrying three reinforced aluminum conductor wires with automatic oil circuit breakers and lightning arrestors. The plaintiff covenanted to replace all fences destroyed, pay all damages incurred by the actual construction and patrolling of the line; to cut all trees necessary to be cut, not to exceed six inches from the ground. Plaintiff reserved the right to remove any trees that would interfere with the use of the right-of-way or that might endanger

life and property. Plaintiff was to remove all debris, and was not to trespass while patrolling its line nor interfere with the defendants' use of the land included in the right-of-way except such as would interfere with the operation, maintenance and patrol of the line. Plaintiff disclaimed any right to the crops, buildings and other objects which could be removed from the right-of-way. None of the poles was located within the body of either of the lakes.

On the point in question respondent Walter E. Dicke testified that he had "fly fished" in the smaller lake which had been stocked with fish for two years; that the fish had not been in the larger lake long enough to be fished; that while the larger lake was from 12 to 18 feet deep and a person "fly fishing" should stand in the water, the lake was of gradual depth with no drop-offs and was built as a pond and not as a reservoir. He said that with the help of the wind he could throw a "fly" 80 feet. There was evidence that the lakes and the facilities surrounding them were attractive features to possible purchasers; that since the line had been completed and the trees removed for that purpose, the beauty of the place had been very much impaired. The estimates of the experts of the difference between the value of the whole property immediately before and after the taking of the easement, particularly because of the marring of the beauty of the recreational area, was from $700 to $4,000.

The Court gave Instruction 2 at the request of the defendants. It read as follows:

"The Court instructs the jury that if you find and believe from the evidence that by reason of the construction, operation and maintenance of the electric transmission line in question, there are risks and hazards which are special and peculiar to the land of the defendants and of a nature that would be different from the damage which is incidental to any land over which the line might pass, then you are instructed

that you are permitted to consider such facts in the assessment of damages as having a bearing, if so, on the present fair market value of the property".

The defendants insist that Instruction 2 was supported by evidence of risks or hazards special and peculiar to the property involved; that there was evidence that a fly line of any person "fly fishing" in the lakes could easily come in contact with the plaintiff's power lines; that judicial notice will be taken that such danger constitutes a risk and hazard; that plaintiff's Instruction 6 authorized the jury that in considering the testimony of any witness they could take into consideration their own experience and observation in the ordinary way of life; that the instruction requires a finding of risk and hazard before considering the effect thereof on the market value without comment on the evidence thereof; that other instructions given, taken together with Instruction 2, were proper qualifying instructions on the measure of damages; that the instruction, even if it may be considered as an absolute declaration of law, was not prejudicial to the plaintiff.

The only "risk" or "hazard" which defendants contend was peculiar to their farm property and which would be different from the elements of damage on any other tract of land by reason of the construction, operation and maintenance of the plaintiff's transmission line, was the danger to fishermen while fly fishing on the lakes. All the elements, including the marring of the beauty of the recreational area of the defendants' farm by cutting some of the trees and the construction of the transmission line in the immediate vicinity of the lakes, were fully covered by the evidence and presumably considered and determined by the jury in its verdict, under all the instructions given. A "risk" is defined in Webster's New International Dictionary, Second Edition, as a "hazard; danger; peril; exposure to loss, injury, disadvantage, or destruction; as, mountain climbing involves great risks, risk of assassination".

"Hazard" is defined as "A risk; danger; peril; as, at the hazard of his life".

■ The only proper purpose of a showing that the maintenance of the plaintiff's transmission line would create a special risk or hazard to a person who might fish in the lakes by the "fly fishing" method, would be to throw light on the reasonable market value of the whole farm before and after the easement was taken. The only reference in the record pertaining to the claim of such a risk or hazard was in the testimony of the defendant Walter E. Dicke, who was asked if "as a fly fisherman, have you had experience in having to be careful, when you are fly fishing with high voltage electric lines when you cast?" The answer was in the negative. He stated that he did not "go straight up in the air" when "fly fishing", but "* * * it goes up as you cast forward and 50 or 80 feet is not a long cast for a good fisherman". He said that with the help of the wind, he could throw a fly 80 feet. At no time did he testify as to the heights reached in such methods of fishing, but only the distance forward. Obviously, the foregoing was not adequate proof for submission to the jury of the issue whether the transmission line, as described, would interfere with "fly fishing" on the defendants' lakes so as to affect the market value of the entire farm property.

■ However, defendants assert that the Court should take judicial notice, under the circumstances shown of the danger of such a special risk and hazard as would be created by the transmission line. Courts do take notice of the fact that "static electricity or lightning, is likely to get on and pass over wires carrying manufactured electricity". Warren v. Missouri & Kansas Telephone Co., 196 Mo.App. 549, 196 S.W. 1030, 1032. Technical matters pertaining to the manifestations of electric currents are not generally known and are not judicially noticed. 31 C.J.S., Estates, § 74, p. 75; Bowen v. Hall-Baker Grain Co., 228

Mo.App. 332, 67 S.W.2d 536, 541. Courts take notice only of facts of general knowledge, and if any doubt exists it should be resolved in the negative. Morfit v. Thompson, 219 Mo.App. 506, 282 S.W. 113, 116; City of St. Louis v. Niehaus, 236 Mo. 8, 17, 139 S.W. 450; State ex rel. F. T. O'Dell Const. Co. v. Hostetter, 340 Mo. 1155, 1156, 104 S.W.2d 671, 675. "Furthermore, it is to be presumed that the taking of the easement, and the maintenance of the line, will all be carried on and conducted in a lawful manner, and the jury should be held to an estimate of damages upon the supposition that plaintiff will perform its duty in this respect". Missouri Power & Light Co. v. Creed, Mo.App., 32 S.W.2d 783, 787. There was no evidence that plaintiff's lines were not insulated or, if they were, that the insulation was such as would likely deteriorate, or that the material used for the line in "fly fishing" was insulated or would conduct electricity, even if wet, or that, in fact, the average person when "fly fishing" would throw his line 21 feet high so as to contact the transmission line. Such are not matters of common knowledge of which the Court could take judicial notice.

■ Furthermore, would a claim that a transmission line created a special risk or hazard to the whole tract because of the danger therefrom to a person "fly fishing" on the lakes constitute proper elements of damage for the jury to consider in fixing the market value of the whole tract? Speculative or remote elements of such damages are not to be considered. Missouri Power & Light Co. v. Creed, supra. It was said in Orgel on Valuation under Eminent Domain, Vol. 1, Section 61, page 280: "Electricity is an element of great potential danger, in the control and use of which great care is necessary, and it may be that persons having no actual knowledge of the practical operation and effect of such lines heavily charged with electricity may fear the dangers which they imagine exist because of the location of the line on the property in question. If this is so, and by reason of such fear the persons affected

are not willing to buy the lands on which the line is constructed, the law cannot regard the depreciation created by such a cause as resting upon any substantial basis and cannot allow any compensation on account of any claimed depreciation which is due to mere fear founded in reality upon lack of knowledge and not justified by the facts".

■ In the Creed case, supra, the power company retained the rights, among others, to ingress and egress for purposes of maintaining its transmission line over defendant's farm, and to patrol the line by men on foot. Defendant in that case relied for his claim for special damages on the likelihood that strange men patrolling the line would disturb defendant's cattle, causing them to stampede, resulting in crippling and loss of weight; that the men might bring cholera to the land, or permit strange dogs to accompany them; that the line might break and contact the livestock; that the gates and fences might be left open. The Court held that the damages claimed must be direct and certain and such as might have reasonably been expected to follow from the appropriation of the defendant's property, and distinguished such from conjectural, speculative and remote elements of damage. The Court said that such claims, when admissible, were considered only as they might affect the market value of the land "in the light of the use to which it may be put". The Court allowed only the claim that the patrolling of the line would disturb the cattle grazing on the land, shown to be used for and especially adapted to pasturage purposes. The Court excluded the other elements of special damages as merely conjectural. The farm of the defendants in the instant case was shown to have been used for dairy purposes, pasturage and cultivation. In our opinion the claim that the maintenance, operation and the patrolling of the plaintiff's line would create such a risk or hazard in the use of the lakes on the farm for "fly fishing" as would materially affect the market value of the farm as a whole is too con-

**910**

jectural, speculative and remote to meet the requirements of the law. Consequently, we hold that the trial court erred in giving Instruction 2, and that the same was prejudicial.

From the foregoing it follows that it was error for the Court to refuse plaintiff's Instruction 14, which would have withdrawn from the jury the elements of special risks and hazards claimed by the defendants. The judgment is reversed and the cause remanded.

CAVE, J., and FRED H. MAUGHMER, Special Judge, sitting by order of the Supreme Court, concur.