## CONSOLIDATED PIPE LINE CO. v. MAHON et al.

No. 21951.   Opinion Filed Oct. 6, 1931.

John F. Butler, for petitioners.

Leo J. Williams and M. J. Parmenter, for respondents.

SWINDALL, J.  On August 22, 1930, C. A. Mahon was engaged in a hazardous employment with the Consolidated Pipe Line Company in the capacity of a "pipeliner," and on said date his employment required him to be eight miles north of Wewoka where he and his associates were engaged in tak-

ing up a four-inch pipe line. Shortly before noon a rain storm came up and Mahon together with some of his associates took refuge in an old house described by him as an old, dilapidated, frame house with a floor, and the windows and doors were removed and there had been cattle and "stuff" in there and it looked like no one had lived in it for quite a while. They took refuge in the old house to protect themselves from the elements and resume work when the storm was over. The employees who had automobiles took refuge in them and the other employees and the foreman went to the old house. There were ten or eleven in the room with Mahon. This was the only place of refuge they had from the storm. There was a piece of tin back of Mahon about two feet square. There was a wire fence on three sides and about 25 feet away from the house. Mahon was struck by lightning while in the house, resulting in an injury, for which compensation was awarded him by the State Industrial Commission on October 30, 1930, in which order the Commission found from the evidence offered that:

"Arising out of and in the course of his said employment, claimant, on August 22, 1930, sustained an accidental personal injury, to wit, being struck by lightning by reason of which he was, and is, temporarily totally disabled from performing manual labor"

—and made an award to claimant.

A petition has been filed in this court to review the award of the Industrial Commission. It is the contention of petitioners that there is no competent evidence to support the order and award, and that the order is contrary to the evidence, and that the order is contrary to law. The principal question involved is whether the injury sustained by Mahon by reason of the lightning stroke arose out of his employment. Section 7285, C. O. S. 1921, provides compensation for the disability of an employee resulting from an accidental personal injury sustained by the employee "arising out of and in the course of his employment." This appears to be the first case presented to this court in so far as it concerns an accident by lightning, the resulting disability, and the application of the provisions of the Workmen's Compensation Law thereto. The authorities from other jurisdictions do not seem to be in harmony upon the question here involved.

As directly applied to the noon intermission it is a long and well-settled rule that the service tie or contractual relations and obligations between master and servant are not broken by such suspension of all activities directly beneficial to the employer.

"A workman is considered in the employment of his master during the intermission for the noon hour if he remains upon the premises." Baldwin, Personal Injuries (2d Ed.) 374.

This rule is more fully stated in Thompson, Neg. vol. 8, par. 3752, as follows:

"A servant is deemed in his master's service whenever present to perform his duties and subject to orders, though at the given moment he may not be actually engaged in the performance of any given work; thus the relation exists during the noon hour where the master especially or by fair implication invites his servant to remain in the premises and lunch in the immediate vicinity of his work."

Agreeably to that rule it is generally held under Workmen's Compensation Laws that while such relation so continues, an injury to an employee may arise out of and in the course of his employment, although he is not directly engaged in the work of his employment at the time. Re Von Ette, 223 Mass. 56, 111 N. E. 696. In that case the court sustained an award of the Industrial Accident Board to an employee injured by falling from the roof of the building in which he was working, where he had temporarily gone to get fresh air and relief from the heat below.

The general rule as to injuries during intermissions from labor, especially where the accident occurs on the employer's premises, is formulated from the decisions as follows in Honnold on Workmen's Compensation, vol. 1, p. 381:

"Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work is reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment. Consequently, no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure a drink, refreshments, food, or fresh air. * * *" (Citing numerous authorities sustaining the text.)

In this case the main contention is not that the injury did not result in the course of the employment, but is that it did not "arise out of the employment," so we do not deem it necessary to further discuss or cite authorities that the injury resulted in

74

the course of the employment, and will devote our further discussion to the question, Did the injury arise out of the employment? The courts have uniformly construed the words "out of the employment" liberally and with a view to extending the scope of a remedial statute. State ex rel. Virginia & R. Lake Co. v. District Ct., 128 Minn. 43, 150 N. W. 211.

The Supreme Court of Minnesota, in State of Minnesota ex rel. Peoples Coal & Ice Co., Plaintiff in Certiorari, v. District Ct. of Ramsey County, 129 Minn. 502; 153 N. W. 119, said:

"A driver for an ice company was required to follow a fixed route in substantial disregard of weather conditions, though permitted to seek shelter in times of necessity. When a severe rain storm, accompanied by lightning, was in progress, he left his team and went to a tall tree just within the lot line, either for protection or in the performance of his duties soliciting orders. Lightning struck the tree, and the same bolt struck him, and he was killed. It is held that the evidence sustains a finding that the death of the decedent was the result of an accident 'arising out of' his employment, within the meaning of the Workmen's Compensation Act (Laws 1913, chap. 467, sec. 9; Gen. Stat. 1913, sec. 8203)."

In the body of the opinion, we find the following language:

"Only three cases involving deaths from lightning are cited,—an English, an Irish, and an American case. Since the submission of the case another American case, Klawinski v. Lake Shore & M. S. R. Co., 185 Mich. 643, 152 N. W. 213, has been decided.

"In Andrew v. Failsworth Industrial Soc. (1904) 2 K. B. 32, 90 L. T. 611, 73 L. J. K. B. N. S. 511, 68 J. P. 409, 52 Week. Rep. 451, 20 Times L. R. 429, a leading case, a bricklayer was killed by lightning, while working on a scaffold some 23 feet from the ground. His position, under the evidence adduced, subjected him to peculiar danger and risk from lightning. A finding that his death arose out of his employment was sustained.

"In Kelly v. Kerry County Council, 42 Ir. Law Times, 23, 1 B. W. C. C. 194, it was held that one killed by lightning while working on a public road did not come to his death from an accident 'arising out of his employment.' The court distinguished the facts of the case from those present in the Andrew Case just cited, holding that there was present no peculiar risk or danger incident to the employee's work so that it could be said that the accident arose from his employment. No evidence was offered of a peculiar risk or hazard from lightning incident to his employment.

"The English case and the Irish case are not regarded as inconsistent. In the Scotch case of Rodger v. Paisley School Board (1912) S. C. 584, the court, in commenting upon them, tersely states the distinction in this way: 'To be struck by lightning is a risk common to all and independent of employment, yet the circumstances of a particular employment might make the risk not the general risk, but a risk sufficiently exceptional to justify its being held that accident from such risk was an accident arising out of the employment.'

"In Hoenig v. Industrial Commission, 159 Wis. 646, ante, 339, 150 N. W. 996, 8 N. C. C. A. 192, an employee was struck and killed by lightning while working on a dam. The Industrial Commission held that his death did not arise out of his employment. The circuit court affirmed its holding, saying, however, that upon the same evidence it would not make a like finding, and its holding was sustained by the Supreme Court. By the Wisconsin statute the findings of the Commission are final upon questions of fact; and by sec. 30 (p. 688) of the Minnesota act the review by the Supreme Court in compensation cases is by certiorari, and it is a review of questions of law, and not of questions of fact.

"The Michigan case, Klawinski v. Lake Shore & M. S. R. Co., supra, involved the death of a railway section hand killed by lightning when in a barn near the right of way to which he had gone for protection from a storm. The court cites the Irish case, Kelly v. Kerry County Council, supra, which it considers controlling. It cites no other case, but refers to the holding of the Wisconsin Industrial Commission, affirmed in Hoenig v. Industrial Commission, supra. The man was exposed to no peculiar danger by the character of his work. The court, in referring to cases under the English law, said that compensation had always been denied for injury by lightning, 'except in cases where the employment necessarily placed the employee at the time of his injury in a position subjecting him to unusual risk from lightning.'

"The opinion of the court was that 'decedent, by reason of his employment, was in no way exposed to injuries by lightning other than the community generally in that locality'."

It may be noted that the English, Irish, Wisconsin, and Minnesota courts approved the findings of the arbitrator or Commission passing upon the facts, the English and Minnesota courts sustaining an award of compensation, and the Irish and Wisconsin courts sustaining the finding that no compensation was recoverable, although it is to be noticed that the Wisconsin court stated that the court below in its findings had said that if the case were presented to it for a finding from the evidence, it would not make

the finding which was made by the Commission.

On the other hand the Michigan court reversed the award of compensation made by the Commission apparently taking the view that the question was not one of fact, but that, as a matter of law, a workman injured by lightning does not suffer injury arising out of his employment. Possibly the court did not intend to take this position, but the language used would seem to indicate it.

The language of the Appellate Division of the Supreme Court of New York in Moore v. Lehigh Valley R. Co. (1915) 169 App. Div. 177, 154 N. Y. Supp. 620, supports the conclusions reached by the Minnesota court, and is in direct conflict with the decision in the Michigan case. The workman in this case was a lineman, and sought shelter during a storm under the cars standing upon a switch near by his place of work. It was not the custom of the defendant to furnish shelter for its linemen in the event of sudden storms, and there was no rule of the defendant as to what the men were to do in such contingency, but each man was supposed to find shelter wherever he could. The defendant was not accustomed to make any deductions in the wages of its linemen by reason of sudden storms interfering with the work, and the defendant make no such deductions upon this occasion. Claimant and several of the other workmen stood under a tree until it no longer furnished protection, when some of the men went into a paper mill near by and, there being no more room there, and apparently no other available shelter, the claimant and two other workmen found shelter under the cars standing on a switch, and while there the cars were moved by an engine belonging to another railroad company, and the claimant was injured. In affirming the award of compensation for the injuries thus received, the court said:

"That the injury was sustained by claimant during the course—that is the period, or time, or extent—of the employment, is not seriously disputed by the defendant; but the defendant strenuously contends that the injury did not arise out of the employment. That the injuries occurred during working hours which were continuous, that it was customary for defendant's linemen to cease work and obtain shelter during sudden storms, and that no deduction was made from the ordinary daily wages paid the workmen by reason thereof, is conceded. It was not only customary that the claimant should seek shelter from the storm, but doing so was not a remote, but a necessary, and unquestionably frequent, incident of his employment during the summer months. Had

he taken shelter in the paper mill, and the roof fallen in, or the floor given way, and he been accidentally injured he would have been entitled to the benefit of the Compensation Law. Whether a place in a stone crusher being operated by machinery, or under a car standing upon a switch, was the safer place, does not appear. The four linemen chose places under the cars. However, assuming that the place under the car was the more dangerous, the fact that the plaintiff's judgment led him to choose it, and that he was injured there, does not bar him from the operation of the act. Contributory negligence furnishes no ground of defense. The Compensation Law says that the employer shall provide compensation 'without regard to fault as a cause of such injury.' The risk of accidental injury was incidental to the claimant seeking and obtaining shelter, and to his employment, and was fairly within the contemplation of both employer and employee. The act of seeking and obtaining shelter arose out of—that is, was within the scope or the sphere of—his employment, and was a necessary adjunct and an incident to his engaging in and continuing such employment. * * *

"Obtaining shelter from a violent storm in order that he might be able to resume work when the storm was over was not only necessary to the preservation of the claimant's health and perhaps his life, but was incident to the claimant's work and was an act promoting the business of the master."

That court held:

"That the injury was 'accidental' in the sense of happening by chance, unexpectedly, or as not expected, from an unforeseen and unexpected, unusual occurrence, and that the injury was one 'arising out of and in the course of his employment,' so that an award of compensation was properly made."

The Supreme Court of Colorado, in the case of Aetna Life Ins. Co. v. Industrial Commission of Colorado, 254 Pac. 995, says:

"Death of farm hand, struck by lightning while returning from neighbor's farm where employer sent him to work for day, held to arise out of employment, in view of C. L. sec. 4389.

"Where one in course of his employment is reasonably required to be at particular place at particular time and there meets with accident, such accident arises out of employment though any other person at such place would have met with such accident, irrespective of employment."

This case cites Hassell I. W. Co. v. Industrial Commission 70 Colo. 386. 201 P. 894, where an award for death by lightning was sustained because the victim was working on a steel bridge over water, and it was said that because of that the employment involved special risks, and so there was a

causal relation between the employment and the death. In the Aetna Life Ins. Co. Case Justice Adams dissents and Chief Justice Burke concurs specially stating that he does so believing that the former opinion was erroneous, and concurs only for the reason he is of the opinion that the course of the court cannot now be altered without a clear violation of the rule of stare decisis.

The Supreme Court of Iowa, in Mary E. Griffith v. B. J. Cole, 165 N. W. 577, holds:

"An injury to a member of a bridge construction gang by a stroke of lightning, resulting in death, while he is sitting in the boarding tent awaiting time to go to bed after his day's work is done, does not arise out of his employment within the meaning of the Workmen's Compensation Act."

The Iowa court appears to base its holding upon the ground that the employee cannot recover for the reason that the injury is such an inevitable accident as cannot be prevented by human care, skill or foresight, but results from natural causes, such as lightning and tempest, floods, inundations, etc., commonly referred to as acts of God, and that the master was free from negligence. The rule announced by the Iowa Supreme Court does not apply in this state to cases arising under the Workmen's Compensation Law.

However, in the Iowa case appear these significant statements:

"It is not intended to hold that injuries from lightning can in no case be due to an industrial employment."

In Chiulla DeLuca v. Board of Park Com'rs of City of Hartford, 107 Atl. 611, the Supreme Court of Connecticut held:

"An appeal to the superior court from the finding and award of the compensation commissioner is an original application invoking the exercise of judicial power, and if finding and award are within the limits of his powers, and are not so unreasonable as to justify judicial interference, his decision must stand.

"To take judicial notice and apply it to the decision of a case is a right which appertains to every court from the lowest to the highest.

"The true conception of what is 'judicially known' is that of something which is not, or rather need not be, unless the tribunal wishes it, the subject of either evidence or argument.

"The compensation commissioner had the power to take notice of scientific authority and dicta in reaching the conclusion complained of.

"The finding of the compensation commissioner that in case of a thunderstorm 'there is greater danger under a tree or in the open than when protected in a house' must stand; it being consistent with the evidence and not contrary to reason.

"A park workman who obtained shelter under a tree during a violent thunderstorm and was killed by lightning while waiting to resume his work held injured in the course of his employment, so as to entitle his widow to compensation for his death."

In the case of Wiggins v. Industrial Accident Board, 170 P. 9, the Supreme Court of Montana held that:

"Where an employee of a county while engaged in work upon the public roads, was killed by lightning, death resulted from an 'industrial accident,' within Workmen's Compensation Act (Laws 1915, c. 96) sec. 16, providing that the industrial accident fund is liable for the payment of compensation to an employee, or, in case of his death, to his dependents for injury arising out of and in the course of his employment."

And further held that:

"An employee of a county required to work on a steel grader while a thunderstorm was threatening was not exposed to more than the normal risk which the people of the community generally are subject to, and there could be no recovery for his death from lightning under Workmen's Compensation Act (Laws 1915, c. 96) sec. 16, imposing liability for death from 'an injury arising out of and in the course of his employment'; the words 'out of' pointing to the origin of the accident, and being descriptive of the relation which the injury bears to the employment."

And held further that:

"It is not a known law of nature of which the court may take judicial notice that metals such as iron and steel possess properties which perceptibly attract lightning and enhance the danger from lightning within the sphere of their influence."

In Netherton v. Lightning Delivery Co., 258 P. 306, the Supreme Court of Arizona by a divided court held that:

"For death of employee by lightning to be compensable under Workmen's Compensation Act (Laws 1925 c. 83), workman must by reason of his employment be more exposed to injury by lightning than are others in same locality and not so engaged, for otherwise injury does not arise out of employment."

And held further that:

"Court cannot assume as matter of judicial notice, that risk of being struck by lightning is greater at altitude of 5,000 feet than at 1,100 feet."

In the case of Madura v. City of New

York, 144 N. E. 505, the Court of Appeals of New York said:

"Inquiry whether given acts arose 'out of' given employment necessarily involves a consideration of facts, and finding of Industrial Board that accident arose out of employment, unanimously affirmed by Appellate Division, withdraws, from consideration of Court of Appeals, review of any decision of fact, but general finding being general conclusion based on findings of special facts, question is open whether it is sustained by such facts."

And further held:

"A laborer on a parkway, taking shelter under tree when thunderstorm arose, on order of foreman, where he was struck and killed by lightning, was in course of employment at time he was struck and his death was compensable."

Also held:

"Judicial knowledge may be taken of scientific facts, and Industrial Board was permitted, without expert evidence, to find that laborer, ordered to seek shelter under tree during thunderstorm, was exposed to an unusual risk."

In the case of Hughes v. Trustees of St. Patrick's Cathedral, 156 N. E. 665, the Court of Appeals of New York said:

"Heat prostration is 'accidental injury' arising out of and during course of employment, if nature of employment exposes workman to risk of such injury. * * * Although the risk may be common to all who are exposed to the sun's rays on a hot day, the question is whether the employment exposes the employee to the risk."

In Nikkiczuk v. McArthur, 9 Alberta L. R. 503, 28 D. L. R. 279, the Canadian court held that a workman employed as a laborer in the construction of a railroad right of way without shelter, on a day when the temperature was about 60 below zero, whose feet were badly frozen, suffered an injury by accident arising out of his employment. Stuart, J., said:

"Simply because you can discover or describe a class of workmen who are generally exposed to such risk, and find the appellant to be one of that class, seems to me to be no valid reason for refusing him compensation, or for saying that his injury did not arise out of his employment. People who are not employed at all do not kick around in the snow when it is 60 below zero. People who are employed as waiters in a comfortable hotel are not exposed to frost bites. Neither are judges, for example, nor lawyers, nor railway superintendents. It is because he was so employed that the appellant was exposed to the risk and I see no reason for excluding his case from the words of the statute because you can discover other

people whose employment similarly exposes them. On that principle no man could recover if you could show that a group of other people were exposed in the course of their employment to similar risks. The man would have to be a rara avis indeed, on such a doctrine before he could succeed."

In Emmick v. Hanrahan Brick & Ice Co., 201 N. Y. Supp. 637, the Supreme Court of New York, Appellate Division, Department 3, held:

"1. Evidence that, while decedent was employed as a carpenter in a shed that had a wire cable from the rafters at the peak of the shed to within a few feet of decedent, he was killed by lightning striking the peak of the shed and passing through the cable to decedent's body, held to authorize a finding that he was subjected to increased hazard of such an injury by reason of his employment, and to support an award of compensation.

"2. In a proceeding for compensation for the death of an employee struck by lightning, whether the injury arose out of the employment (that is, whether deceased was subjected to a special or increased hazard, due to the circumstances under which he was required to work) held a question of fact.

"3. The court is justified in verifying its information or refreshing its recollection concerning, atmospheric electricity from recognized authorities."

It will be noted that the section of our statute relative to the injury arising out of and in the course of the employment is the same as the New York statute.

In the brief of respondents there are a number of quotations from recognized authorities concerning atmospheric electricity. Among them are Prof. Robert De Courcy Ward of Harvard University, vol. 14 of the New International Encyclopedia, vol. 14 of Encyclopedia Britannica, Prof. C. F. Brook on "Why the Weather." See, also, Encyclopedia Americana under the heading "Protection from Lightning." We do not deem it necessary to set out the views of the scientists herein, as we do not see that any useful purpose could be served, as the State Industrial Commission was justified in verifying its information or refreshing its recollection concerning atmospheric electricity from these or other recognized authorities.

An employee may be found to be performing services "growing out of and incidental to his employment" where he was seated on a large piece of rubber in the factory at the noon hour, eating his lunch in accordance with the long-established custom known by and tacitly consented to by his employer, and a pile of crude rubber near him unexpectly fell on him, breaking his leg. Racine

Rubber Co. v. Industrial Commission, 165 Wis. 600, 162 N. W. 664. And in Blovet v. Sawyer, 6 W. C. C. (Eng.) 18, a bricklayer who was paid according to the number of hours he actually worked, and who was at liberty to remain upon the premises to eat his dinner or not, as he thought fit, sat down during the noon hour under the shelter of a wall which he was engaged in building; and while there was seriously injured by the wall falling upon him. The court said that even though he was paid by the hour, the intermission for dinner could be regarded "as part of the time allowed for some purpose ancillary to the work to be done, as for example, eating the necessary food;" it would be taking a strained view to say that the pause in the middle of the work for dinner was a break in the employment. Compensation was allowed.

In Haller v. Laning, 195 Mich. 753, that court held that:

"An injury to a city employee engaged in outdoor work in inclement weather, by the explosion of vapor from a gasoline can in the toolhouse used in connection with the work, to which he had gone for shelter whilst eating his dinner, when he struck a match to light his pipe arises out of and in the course of his employment within the Workman's Compensation Act, if he violated no rule of the employer, and was not aware of the presence of the vapor."

In Morris v. Lambeth Borough Council, S. W. C. C. (Eng.) 1, it was held that:

"An injury to a night watchman caused by the falling of a shanty in which he had gone to cook some food, as it was raining, may, in the absence of any prohibition against the use of the shanty, be considered as arising out of and in the course of his employment."

The petitioners contend that this case is governed by the rule announced by this court in Baker v. State Industrial Commission, 138 Okla. 167, 280 P. 603. We cannot agree with this contention. In that case the State Industrial Commission denied compensation and the claimant filed an action in this court to review the finding and award of the Industrial Commission, and this court affirmed the findings. In that case there were no facts or circumstances to show that the claimant was more exposed to injury by the elements arising out of his employment than others in the same locality are so exposed.

This court said:

"The claimant seeks to bring his case within the principles laid down by the Supreme Court of Illinois in the case of Central Illinois Public Service Co. v. Industrial Comission, 291 Ill. 256, 126 N. E. 144, 13 A. L. R. 967, wherein a tornado was shown to have blown down the building in which the employee was working. We recognize that the doctrine there announced is the law, and it will be applied when called for by the facts. But the facts in the present case lack an essential element existing in that case."

The Illinois Supreme Court approved an award for compensation holding the injury arose out of and in the course of employment.

In the case of Skelly Oil Co. v. State Industrial Commission, 91 Okla. 194, 216 Pac. 933, this court, in the first paragraph of the syllabus, held:

"If the place of the employee's work, by reason of its location and nature, would likely expose him to the danger of sunstroke, or if the risk of injury by sunstroke is naturally connected with and reasonably incidental to his employment, as distinguished from the ordinary risk to which the general public is exposed from climatic conditions, the master will be liable for the consequential injuries."

In passing on the facts, this court said:

"The finding of the State Industrial Commission was that the injury resulted from an accident happening in the course of claimant's employment by the Skelly Oil Company. The findings of the Commission involved a consideration of the question of fact before mentioned. As the testimony shows that the place where the claimant was performing his services for the petitioner was surrounded on three sides by an enclosure, and the weather being hot, we cannot say that the evidence showed that the location and nature of the work did not peculiarly expose the employee to the danger of sunstroke. It at least presents a record from which men of ordinary prudence and care might arrive at different conclusions, and if so, the record presented a question of fact for determination by the Commission. The Commission having found the issue of fact in favor of the claimant, the conclusion reached thereon is binding on this court."

In the case of Merrill v. Penasco Lumber Co., 204 P. 73, the Supreme Court of New Mexico held that:

"An accident to a workman employed in a forest caused by a falling tree and resulting in his death, under the circumstances of this case, arose out of his employment within the meaning of the Workmen's Compensation Act."

And quotes with approval the case of State v. District Ct., 129 Minn. 502, supra. The New Mexico Supreme Court says:

"Examining the facts of the case now before us, we find that the accident occurred

in the course of lumbering operations in the Sacramento mountains. It needs no proof to show that the mountain regions of New Mexico are subject to sudden fierce and violent storms. It is a matter of common knowledge that the blowing down of trees in such storms is not an unusual occurrence, and, if proof were necessary as to the particular region where this accident occurred, it is found in the evidence. The risk of injury from the falling of such trees is one naturally incident to an employment in that industry, and one which both employer and employee must anticipate."

In the case of Madura v. Bronx Parkway Commission, 201 N. Y. Supp. 639, in considering an injury by lightning, that court said:

"If a workman is justified in obtaining the shelter of a tree from one of the elements, as an act promoting the business of the master; namely, in order that he might be able to resume work when the rain was over, it may fairly be said that his act and that of his foreman, in obtaining this shelter in his employer's interest at greater risk of another of the elements—the lightning—combined with the lightning to produce the injury. His employment thus subjected him to greater hazard under the tree than if he had been permitted to leave his work with the others, or had denied himself any shelter at the risk of his health or life, and consequently at the risk of his ability to resume work for his employer. This extra danger to which he was exposed was something more than the normal risk of humanity, and may be said to have arisen out of his employment."

A learned jurist in a sister state, after reviewing the authorities discussing the words "out of the employment" and "in the course of the employment," says the words themselves would seem to be clear, yet they have been productive of much discussion that has filled volumes of reports and textbooks, and concludes that the discussion, reasoning, and definitions found in McNicol's Case, 215 Mass. 497, 102 N. E. 697, L. R. A. 1916A, 306, are as enlightening as one may find. We think his suggestion is timely and well expressed, and were it not for the fact that the Justices of this court are unable to reach a unanimous agreement on a decision in this case, we would endeavor to follow the suggestion and assist in keeping the number of volumes from increasing. Our court has several times approved the reasoning and rule announced by the Massachusetts court. which is as follows:

"It is not easy nor necessary to the determination of the case at bar to give a comprehensive definition of these words which shall accurately include all cases embraced within the act, and with precision exclude those outside its terms. It is suffi-

cient to say that an injury is received 'in the course of' the employment when it come (s) while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

So, in this case, suppose that the respondent had been at work removing the pipe line and lightning had struck the line and a bolt of lightning injured him, would it be contended that his employment in taking up a metal pipe line would not more expose him to injury from lightning than others in the same locality are so exposed? In other words, is the causative danger peculiar to the work, and not common to the neighborhood? We think the causative danger was peculiar to the work, under the facts and circumstances of this case. Would it be contended that his employment in removing a pipe line would not necessarily accentuate the natural hazard from lightning? If the claimant was exposed to injury from lightning by reason of his employment, something more than others in the same locality are exposed; if his employment necessarily accentuated the natural hazard from lightning and the accident was natural to the employment, though unexpected or unusual, then a finding is sustained that the accident from lightning was one "arising out of the employment." An injury, to come within the Workmen's Compensation Law, need not be an anticipated one; nor, in general, need it be one peculiar to the particular employment in which the workman is engaged at the time. State v. District Court, L. R. A. 1916A, 344, supra. Let us go one step further and assume that when the storm came up the respondent ran for

shelter and slipped and fell and fractured a limb, would we hold that there was no causal relation between the injury and the employment? We will place Mahon in the old house, where the facts place him, and while waiting there for the storm to subside that he might return to work, a part of the wall fell in and injured him, would it be seriously contended that the accidental personal injury did not arise out of the course of employment? If, under the facts assumed, Mahon might recover compensation, which we think he could, we see no reason for holding his injury did not arise out of his employment in this case, when he received an injury from lightning while waiting to return to work. Any other construction of the statute would not be in harmony with our holding in sunstroke and other cases construing the words of our Workmen's Compensation Law "out of" and "in the course of the employment," as well as contrary to holdings of many other courts in similar cases. We think that, under the facts in this case, where the respondent Mahon was employed to assist in removing a pipe line, and that no shelter was provided by the master for the employee, and that the employment more exposed the respondent to the elements than the public generally in the neighborhood are so exposed, and that the danger of the elements and the natural instinct of a human being to seek shelter, and the right of the respondent to endeavor to protect himself from the elements, are such as to have been contemplated by a reasonable person familiar with the whole situation, and that the injury did arise out of the employment.

The respondent Mahon obtained shelter from a violent thunder and rain storm in order that he might be able to resume work when the storm was over. If he had remained at work and got wet and contracted cold on account of the elements—the thunder and rain storm—the master would have been liable for any medical attention and temporary total disability in the event he became ill from the exposure to the elements for more than five days, so that obtaining shelter was not only necessary to the preservation of his health, but was incident to his work and was an act promoting the business of the master. We think the employment more exposed the respondent to the elements than the public generally in the neighborhood are so exposed for the reason that while he was engaged in taking up a pipe line a sudden and unexpected thunder and rain storm came up; he sought shelter in an old, delapidated house, with no windows or doors—the only shelter he had from the elements—the rain. In obtaining this shelter in his employer's interest and to preserve his health, he exposed himself to an equal or greater risk from the elements—the lightning.

We think it is a matter of common knowledge that when a sudden and unexpected rain storm occurs in the locality or neighborhood eight miles north of Wewoka, the persons living and laboring in that locality in seeking refuge from such a storm are not required to enter an old, delapidated house without windows or doors which no one has occupied for quite a while, but, on the contrary, such persons may under such circumstances seek shelter in houses with doors and windows and constructed so as to minimize danger from the elements. It is generally known that an old house in the condition of the one in which Mahon sought shelter is much more liable to be struck by lightning or blown down by the wind than the average house in the same locality which is habitable and inhabited. So, we think the State Industrial Commission was justified in holding that the employment of Mahon exposed him more to the elements than the public generally in the neighborhood are so exposed. This special finding was included in the general finding of the Commission.

We realize that it would be very difficult as well as expensive for the master to provide shelter for employees engaged in the kind and character of work that the respondent Mahon and his associates were performing at the time he received the injury. However, this being true, it goes to show that the risk of being struck by lightning is one naturally incident to an employment in that kind of work and one which employer and employee must anticipate.

For the reasons herein stated, we hold: (1) An injury is received "in the course of the employment" when it comes while the workman is doing the duty which he is employed to perform. It "arises out of the employment" when there is apparent to the rational mind upon consideration of all the circumstances a causal relation between the conditions under which the work is required to be performed and the resulting injury. (2) Stroke by lightning is "accidental injury" arising out of and during the course of the employment, if nature of employment exposes workman to risk of such injury. (3) Although the risk may be common to all who are exposed to the elements during a sudden and unexpected violent thunderstorm accompanied by lightning and rain, the question is whether the employment exposes the employee to the risk. (4) If the em-

ployment exposes the employee to peculiar danger and risk of being struck by lightning more than others in the same locality are so exposed, and the employee is struck by lightning while in the discharge of his duties and sustains an accidental personal injury covered by the terms and provisions of the Workmen's Compensation Law, then he may recover compensation for such accidental injury. (5) A "pipeliner" while in the discharge of his duties in an employment covered by and included in the Workmen's Compensation Law, and in a place where he is more exposed to the peculiar danger and risk of being struck by lightning than are others in the same locality not so engaged, and who obtains shelter in an old house during a sudden thunderstorm, to protect himself from the elements and resume his work after the storm, and while there for such purpose he is struck and injured by lightning, then he was injured in the course of and arising out of his employment so as to entitle him to compensation for accidental personal injury. (6) The State Industrial Commission is justified in verifying its information or refreshing its recollection concerning atmospheric electricity from recognized authority. (7) Under the facts and circumstances of this case a finding by the State Industrial Commission that the accidental personal injury to respondent Mahon by being struck by lightning arose out of and in the course of his employment is approved.

The award of the State Industrial Commission is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, McNEILL, and KORNEGAY, JJ., concur. RILEY, J., dissents. ANDREWS, J., absent.

RILEY, J. (dissenting). I do not disagree with the rule of law announced in the majority decision. My objection is the application of that rule to the facts in the case at bar.

Paragraph 4 of the syllabus of the majority opinion states the law to be:

"If the employment exposes the employee to peculiar dangers and risk of being struck by lightning, more than others in the same locality are so exposed, and the employee is struck by lightning while in the discharge of his duties and sustains an accidental personal injury covered by the terms and provisions of the Workmen's Compensation Law, then he may recover compensation for such accidental injury."

By paragraph 6 of the majority opinion it is held that the State Industrial Com-

mission is justified in taking judicial notice of scientific data.

However, it should be borne in mind that there is not one syllable of testimony in this record to show that the place where Mahon labored, or the place where he sought shelter and was injured by lightning, was any more exposed to the hazard of lightning than was any other place in the neighborhood, or elsewhere, for that matter. Nor is there any occasion to digress from the fact of the complete absence of such evidence, as is required to support the award, and endeavor to substitute therefor judicial notice of scientific data, for the simple reason that it is not shown that the Commission took judicial notice of anything.

Our law provides compensation for industrial accidents only: those growing out of the employment and caused by the hazards of the industry, or, in other words, compensation is afforded for personal injuries accidentally sustained. In the final analysis those accidents chargeable to the industry are borne by the industry and those injuries resulting from the forces of nature described in the common law as acts of God are wholly uncontrolled by men and are not so chargeable. Klawinski v. Lake Shore & M. S. Ry. Co. (Mich.) 152 N. W. 213.

In order for a workman to recover for an injury caused by lightning, he must show "some causative connection between the injury and something peculiar to the employment, because 'out of' involves the idea that the injury is in some sense due to the employment, * * * a causative danger peculiar to the work and not common to the neighborhood." Griffith v. Cole Bros. (Iowa) 165 N. W. 577; Kelly v. County Council, 13 B. W. C. C. 194; Robson v. Blakely, 5 B. W. C. C. 36; Wiggins v. Ind. Acc. Bo. (Mont.) 170 P. 9; Thier v. Waddifield (Mich.) 178 N. W. 16; Alzina Const. Co. v. Indus. Comm. (Ill.) 141 N. E. 191.

The rule stated in the last-cited case is:

"The general rule in all these cases would seem to be that the employer cannot ordinarily be held liable to pay compensation for injury caused by force of nature which he cannot reasonably foresee and guard against, where the employee is no more subject to injury from such forces than others, but that the employer is liable where the work or method of doing it exposes the employee to the forces of nature to a greater extent than others in the community are exposed 1 Honnold on Workmen's Compensation secs. 117, 119. Bradbury on Workmen's Compensation (3rd Ed.) 660, 661; Corpus Juris Workmen's Compensation Acts, 77."

See, also, Netherton v. Lightning Deliv-

ery Co. (Ariz.) 258 P. 306, wherein the rule is stated:

"The facts in each of these cases are different and it would be of little value to state them, but running through all of them, we find the general principle of law which should apply in substantial agreement. It may be briefly stated thus: 'When the workman, by reason of his employment, is more exposed to the injury by lightning than are others in the same locality and not so engaged, the injury may be said to arise out of the employment; when, however, it appears that nothing in the nature of the employment has exposed him to any more danger than that shared in common by the general community, the injury does not arise out of the employment and is not compensable. To use an extreme illustration, it is a notorious fact that lightning is more apt to strike a very high structure standing out above its fellows than the surface of the ground. If a workman were engaged in repairing the summit of the Washington monument or the Eiffel Tower during a thunderstorm, and were injured by lightning while so doing, it would very properly be said that the risk in such employment of injury by lightning was greater than that of the ordinary person in the cities of Washington and Paris. If, on the other hand, the ordinary clerk or messenger going about his master's business on the street were suddenly struck while in the midst of a crowd, it could not be said that his occupation increased his risk of being so struck over that of the ordinary pedestrian. Each case must therefore be considered on its own facts. But the standard for testing these facts is always the same, to wit: Did the employment increase the danger?"

In Baker v. State Industrial Comm., 138 Okla. 167, 280 P. 603, this court held:

" 'Under C. O. S. 1921, section 7285, a compensable accidental injury must disclose from its circumstances the existence of two essential elements: it must have resulted 'in the course of' employment and it must also have arisen 'out of' employment. The absence of either of these essential elements destroys the application thereto of the beneficient provisions of the Compensation Law.' Lucky Kidd Mining Co. v. St. Ind. Comm., 110 Okla. 27. 236 P. 600."

That holding was based upon facts showing an injury resulting from the violence of nature, disclosed in the second paragraph of the syllabus:

"An employee was returning from a place where he had performed a service covered by the conditions of his employment. And, when being met by a cyclone, he sought refuge in a building situated near the road he was traveling. the building was destroyed by a storm, and the employee was thereby injured. The peril of the employee at that time was no greater than that common to all persons within the territory of the storm. His employment neither caused nor contributed to the injury; therefore, the injury did not arise out of his employment; hence it was not compensable under the Workmen's Compensation Law of this state (Comp. St. 1921, section 7282, et seq., as amended."

As in the Baker Case pointed out, to hold that such an accident arose out of the employment, when the peril of the employee was no greater than that common to all persons within the territory of the storm, would be to make the employer an insurer against all injuries received in the course of the employment, when, in fact, such law limits recovery in addition to those growing out of the employment, whereas the phrase "out of * * * his employment" points to the origin or source of the injury, and presupposes the existence of a causal connection between it and the employment. To conclude otherwise would lead us far afield and beyond a liberal construction of our Compensation Act.

To conclude otherwise would be to permit the workman to enjoy privileges above those of the public generally, and in effect be insured against every sort of calamity, which is not intended by the statute. Farmers Gin Co. v. Cooper, 147 Okla. 29, 294 P. 108.

I conclude, therefore, that where a workman by reason of his employment is more exposed to injury by lightning than are others in the same locality not so engaged, the injury may be said to arise out of the employment, but where there is nothing in the nature of the employment which exposes the workman to any more danger than that to which other persons of the community are subjected, such injury does not arise out of the employment and so is not compensable. In short, for the injury to be compensable, there must be an extra risk by reason of the employment. Industry is chargeable only with the burden resulting from the hazards of industry and unless such hazards are combined with the disturbed elements of nature so as to accentuate the hazards of the industry, the resulting injury cannot be held to arise out of the employment.

The Industrial Commission made no finding that Mahon's employment subjected him to an extra hazard of being struck by lightning. nor would the record support such a finding. The peculiar facts here establish conclusively the contrary, for Mahon sought refuge in an abandoned house of the neighborhood, and it was there he was injured. Had a person of the neighborhood who was unemployed been in Mahon's place, such per-

son would have been struck by the same bolt of lightning conducted by the same fence or otherwise.

From the Court of Appeals of Ireland comes the case of Kelly v. Kerry County Council, a decision in 1908, Butterworth's Workmen's Compensation Cases, vol. 1, 194, wherein Michael Kelly was shown to have been killed by lightning while working on a road clearing out gullets, choked by a thunder shower; the question was whether the accident arose out of the employment. It was found that "no evidence was offered to me that the position of these men on the road exposed them to any greater risk of being struck by lightning than if they had been working in a field or garden," and it was held that the accident was not one arising out of the employment, 42 Ir. L. T. 23.

In the case of Andrew v. Failsworth Ind. Sec., Ltd., 2 Kings Bench 32 (1904), it was held:

"Where the place and circumstances in which a workman is employed involve a greater than ordinary risk of injury by lightning, such an injury may be considered as caused by an accident arising out of his employment within the meaning of the Workmen's Compensation Act."

There the workman was a bricklayer and when injured was working on a scaffolding at a height of 23 feet above ground, and evidence there showed an exposed position in which the hazard was increased in wet weather. It was shown that elevation constituted a defined point at which a discharge would more likely occur. Therein it was pointed out that the case of a workman being struck by lightning while in the course of his employment, generally speaking, was a typical illustration of an accident not arising out of the employment, "but, on the contrary, prima facie an instance of something arising altogether outside it. * * *" Such illustration is the case at bar. There was no evidence that the workman here was more exposed than would have been some other of the community working in a field or garden or sitting in the house where the injury occurred.

Therefore, I would hold that the risk on account of employment was no greater than was the hazard common to citizens of the community not so employed. The injury did not arise out of the employment.