1999 OK CIV APP 65

**Glennita J. HOLLMAN, Petitioner,**

v.

**COMFORT CARE INC. d/b/a Home Health Care Services, National American Insurance Company, and Workers' Compensation Court, Respondents.**

**No. 92,281.**

Court of Civil Appeals of Oklahoma, Division No. 2.

May 18, 1999.

John R. Colbert, Colbert Law Firm, Ardmore, for Petitioner.

Brian McMahan, McClure Law Office, Oklahoma City, for Respondents.

REIF, J.

¶1 This case concerns an injury that Claimant Glennita Hollman admittedly sustained when she slipped on wet grass at the residential facility where she had been sent by Employer to care for a client. At the time of her fall, Claimant had completed her care of the client and was returning to her car to proceed to the next scheduled client. The workers' compensation trial judge concluded that the case of *Odyssey/Americare of Oklahoma v. Worden,* 1997 OK 136, 948 P.2d 309, precluded Claimant's recovery for an injury caused by the neutral risk of wetness due to rain. This conclusion was affirmed by a three-judge panel. On review, we reverse. We hold that Claimant Hollman was exposed to the risk of weather wetness by the employment requirements and travel directions of Employer in the same substantial way that

the claimant in *Stroud Municipal Hospital v. Mooney,* 1996 OK 127, 933 P.2d 872, was exposed to the otherwise neutral risk of traffic.

¶2 In construing *Mooney,* the *Worden* opinion stressed that the "special mission" *direction of the employer* for the employee to return to work *was the basis* whereby "the traffic became a risk of his employment." *Worden,* 1997 OK 136, ¶17, 948 P.2d at 313. In other words, the employer sent the employee into the otherwise neutral risk of traffic by its travel requirement and direction. In the instant case, Employer sent Claimant out in rainy weather to attend a client and similarly exposed her to the otherwise neutral risk of weather wetness.

¶3 The court in *Mooney* said it well when it observed "once it is determined that the employee is doing the employer's work, e.g. is on a special mission, it does not avail the employer to say the risks of injury to the employee are no greater than the risks to the general public." *Mooney,* 1996 OK 127, ¶11, 933 P.2d at 875. That is, when the employer requires the employee to do things that *directly* expose the employee to a general danger of injury, the risk of injury from such dangers is as much a risk that arises out of employment as the specific danger of working around machinery on an employer's premises.

¶4 We note that the *Worden* case construes *Mooney* as not abrogating the risk analysis test for determining whether neutral risks are employment related. However, risk analysis is not a new test. Risk analysis is simply a refinement of the "increased risk" test. In *American Management Sys., Inc. v. Burns,* 1995 OK 58 n. 17, 903 P.2d 288, 292 n. 17, the court cited approvingly prior case law concerning enhanced on-the-job exposure from natural hazards.

¶5 Risks associated with weather conditions were addressed in the pre-*Burns* case of *Consolidated Pipe Line Co. v. Mahon,* 152 Okla. 72, 3 P.2d 844 (1931). The third syllabus of *Mahon* states: "Although the risk may be common to all who are exposed to the elements during a sudden and unexpected violent thunderstorm accompanied by light-

ning and rain, the question is whether the employment exposes the employee to the risk." In its fourth syllabus, *Mahon* recognizes coverage where the employment exposes the employee to a weather risk "more than others in the same locality are so exposed."

■ ¶ 6 Requiring employees to work in inclement weather involves "more exposure" to the risks of such weather than the general public who have the choice not to undertake activity or even go out in adverse weather. Perhaps the best illustration of this point is found in *American Gen. Ins. Co. v. Webster*, 118 S.W.2d 1082, 1085–86 (Texas Civ.App. 1938), where the court observed:

> In the case before us the very work which the deceased was doing for his employer exposed him to greater hazard from heatstroke than the general public was exposed to for the simple reason that the general public were not pushing wheelbarrow loads of sand in the hot sun on that day.

1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 8.42 (1998), considers this statement to be "[t]he proper application of the increased-risk test." In the instant case, members of the general public were not required to go out in the rain to attend to clients of Employer for the benefit of Employer as Claimant was required to do.

■ ¶ 7 Risk analysis must be applied consistent with the time honored test for "arising out of employment" set forth in the first syllabus of *Mahon:* "[An injury] 'arises out of the employment' when there is *apparent to the rational mind upon consideration of all the circumstances* a causal relation between the conditions under which the work is required to be performed and the resulting injury." 152 Okla. 72, 3 P.2d 844 (emphasis added). In other words, the connection between working requirements and the risk of injury, including neutral risks, is more a matter of common sense than a mechanical, legalistic test.

■ ¶ 8 The court in *Worden* reached the correct common sense result under the facts of that case. The claimant in *Worden*

did not have "more exposure" or "increased risk" from the wetness due to rain *on her own lawn* as she walked to her car *to begin* employment travel. That situation, even if it is assumed to be in the course of employment,[1] places the employee at no greater risk than anyone else who would leave their house for the first time after a rain shower and venture onto their own lawn to retrieve a newspaper. In contrast, employees who have actually entered upon employment travel in rainy weather are exposed to increased danger from wet, slick streets and other surfaces that they must traverse to carry out their employer's business. Additionally, employees who are required to travel to different locations on their employer's business encounter varying and often unfamiliar conditions produced by wetness due to rain. If Claimant Hollman had been involved in a traffic accident as a consequence of driving on wet, slick streets on Employer's business, there is no question that she would be covered under *Mooney*. If walking across a wet surface is a necessary part of employment travel to deliver goods or services to a client for an employer, common sense dictates that a pedestrian accident from slipping on the wet, slick surface should likewise be covered.

■ ¶ 9 There was no controversy concerning the facts and circumstances surrounding Claimant's fall and injury while working for Employer. Where the facts are not in dispute, the question of whether a claimant's injury arises out of employment is one of law. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, 958 P.2d 795.

¶ 10 Based on the foregoing, we hold that the trial court and three-judge panel erred as a matter of law in applying the *Worden* case to deny the claim in the instant case. There is only superficial similarity between *Worden* and the instant case. Claimant Hollman sustained an accidental injury from a risk that *did* arise out of her employment requirements to travel in inclement weather conditions. Accordingly, we vacate the denial of her claim and remand with directions to adjudicate her entitlement to benefits.

---

**1.** *Worden,* 1997 OK 136 n. 1, 948 P.2d at 313 n. 1.

¶ 11 VACATED AND REMANDED WITH DIRECTIONS.

STUBBLEFIELD, P.J., concurs, and BOUDREAU, V.C.J., dissents.

BOUDREAU, V.C.J., dissenting.

¶ 1 I dissent. I view this case as being controlled by the supreme court's decision in *Odyssey/Americare of Oklahoma v. Worden,* 1997 OK 136, 948 P.2d 309.

¶ 2 Claimant is a certified nurse's home health aide employed by Employer Comfort Care Home Health. She seeks compensation for an injury sustained when she slipped on wet grass and fell while returning to her car following a client visit. "Oklahoma's jurisprudence has long recognized that a compensable work-related injury must *both* (1) occur *in the course of* and (2) *arise out of* the worker's employment." *American Management Sys., Inc. v. Burns,* 1995 OK 58, ¶ 5, 903 P.2d 288, 290–91. Claimant has the burden of proving both elements. *Superior Stucco v. Daniels,* 1995 OK 127, ¶ 6, 912 P.2d 317, 318.

¶ 3 "In the course of employment" and "arising out of employment" are not synonymous. *Burns,* 1995 OK 58, ¶ 5, 903 P.2d at 290–91. "In the course of employment" refers to the "time, place or circumstances under which the injury is sustained." *Id.* at ¶ 5, 903 P.2d at 290 n. 3. An injury "arises out of employment" if there is a causal relationship between the act the claimant is engaged in when the injury occurs and the requirements of the claimant's employment. *Fudge v. University of Okla.,* 1983 OK 67, ¶ 4, 673 P.2d 149, 150.

¶ 4 Here, although there is no question that Claimant's injury occurred in the course of employment, the trial court determined her injury did not arise out of employment. "Only injuries having as their source a risk not purely personal but one that is causally connected with the conditions of employment shall be deemed to arise out of employment." 85 O.S. Supp.1998 § 3(10)(a). There are three categories of injury-producing risk that can arise in the course of employment: (1) risks solely connected to employment, which are compensable; (2) purely personal risks, which are not compensable; and (3) neutral risks, which are neither uniquely employment-related nor purely personal, and which may or may not be compensable. *Worden,* 1997 OK 136, ¶ 6, 948 P.2d at 311.

¶ 5 The workers' compensation trial court found, and the majority here agrees, that the cause of Claimant's fall was a neutral risk, the wet grass caused by the rain. Whether a neutral risk "arises out of employment" is a determination of fact for the trial court; its decision will not be disturbed on appeal if supported by any competent evidence. *Id.* Oklahoma now uses the "increased risk test" for determining whether an injury from a neutral risk is employment related, thereby "arising out of employment." *Worden,* 1997 OK 136, ¶¶ 6, 8, 13, 19–20, 948 P.2d at 311–13; *see also Burns,* 1995 OK 58, ¶ 7, 903 P.2d 288, 292.

¶ 6 Under the increased risk test, "the distinctiveness of the employment risk can be contributed by the increased *quantity* of a risk that is *qualitatively* not peculiar to the employment." *Worden,* 1997 OK 136, ¶ 8, 948 P.2d at 311 (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 6.20 (1997)). "The rule is often stated as a determination of whether the claimant's employment exposed the worker to more risk than that to which the general public was exposed." *Id.* The record on appeal discloses competent evidence supporting the trial court's determination that the cause of Claimant's fall was a neutral risk which did not expose her to *more* risk than that to which the general public was exposed.

¶ 7 Claimant testified that she was leaving her first appointment of the morning and walking to her car when she fell. It was raining and Claimant crossed a grassy area, seeking the shortest path to her car. She slipped on the wet grass and fell, injuring herself.

¶ 8 The trial court correctly relied upon *Worden* in making its determination that Claimant's injury did not arise out of her employment. *Worden* is identical to this case in all material facts. In *Worden,* a field nurse worked out of her home scheduling appointments and traveling to visit patients.

As she was leaving her home to travel to an appointment, she slipped on wet grass in her yard and fell, injuring herself. *The parties agreed that the nurse was in the course of her employment when the accident occurred.* The issue before the supreme court on review, then, was whether the nurse's injury arose out of her employment, precisely the same issue that the trial court confronted here. In holding that the injury did not arise out of employment, the supreme court stated:

> Claimant encountered the neutral risk of wet and therefore slippery grass due to rain. Her employment exposed her to no more risk of injury from wet grass than that encountered by any member of the general public.

*Id.* at ¶ 21, 948 P.2d at 313. I agree with the trial court and three-judge panel that *Worden* is controlling in this case.

¶ 9 The majority attempts to distinguish *Worden* on several grounds. The majority asserts that, unlike the nurse in *Worden*, Claimant was not merely beginning her employment travel, but was between appointments when the accident occurred. In essence, the majority argues that, because Claimant was clearly within the course of her employment when her injury occurred, her injury arose out of her employment. This approach has been expressly refuted in Oklahoma. *Burns*, 1995 OK 58, ¶ 7, 903 P.2d at 291. Moreover, in *Worden*, even though the parties agreed the nurse was within the course of her employment, that agreement did not affect the supreme court's determination that her injury did not arise out of her employment. *Worden*, 1997 OK 136, ¶ 21, 948 P.2d at 313.

¶ 10 The majority also asserts that Claimant "was exposed to the risk of weather wetness by the employment requirements and travel directions of [Employer]," relying on *Stroud Municipal Hospital v. Mooney*, 1996 OK 127, 933 P.2d 872. *Mooney*, however, does not support the majority's assertion.

¶ 11 In *Mooney*, the claimant, a laboratory supervisor at a hospital, was on his lunch break when he was recalled to work for an emergency situation. As he traveled back to work, he was involved in a traffic accident. The supreme court held, in that particular situation, where the claimant was on a "special mission" for his employer, the employer could not successfully argue that he was at no greater risk than a member of the general public. *Id.* at ¶ 11, 933 P.2d at 875. *Mooney's* limitation to "special mission" situations was reiterated in *Worden*, 1997 OK 136, ¶¶ 17–18, 948 P.2d at 312–13. *Mooney* does not apply here.

¶ 12 The majority also quotes *Consolidated Pipe Line Co. v. Mahon*, 152 Okla. 72, 3 P.2d 844 (1931) (syl. 3 by the court), saying, "Although the risk may be common to all who are exposed to the elements during a sudden and unexpected violent thunderstorm accompanied by lightning and rain, *the question is whether the employment exposes the employee to the risk.*" (Emphasis added.) This "but for" positional-risk analysis has also been expressly refuted in Oklahoma. *Burns*, 1995 OK 58, ¶ 7, 903 P.2d at 291–92; *Worden*, 1997 OK 136, ¶¶ 10, 13, 948 P.2d at 311–12.[2]

¶ 13 In an apparent effort to prevent this from being called a positional-risk analysis, the majority cites to a footnote in *Burns* that concerns "enhanced on-the-job exposure from natural hazards." The text of that footnote makes it clear, however, that the situation we are presented with here is not what the court envisioned in *Burns*.

> For a detailed explanation of what is to be deemed an *enhanced* on-the-job hazard from natural hazards, see jurisprudence discussing the proof required in Oklahoma to show compensable harm from *work-related heat exhaustion*. It declares that in heat stroke claims a worker's injury must be from exposure to the sun *more harmful than* that the general public would have experienced when in the same *locus in quo*—i.e., when present at the time and

2. Moreover, *Consolidated Pipe Line Co. v. Mahon*, 152 Okla. 72, 3 P.2d 844 (1931), was decided in an era when the employer bore the burden of proving that an injury was not work related; the burden of proof has now been shifted entirely to the employee, so that *Mahon* and its ilk are of doubtful application. *See American Management Sys., Inc. v. Burns*, 1995 OK 58, ¶ 6, 903 P.2d 288, 291.

place of the worker's injurious or fatal solar exposure. . . .

*Burns,* 1995 OK 58, ¶ 7, 903 P.2d at 292 n. 17 (citations omitted).

¶ 14 The majority relies upon this language in *Burns* in arguing that Claimant would not have been walking in that location if not for her job requirements. That may be, but it is a far cry from saying that her exposure to the natural elements was *more harmful* than what the general public would have experienced *in the same place at the same time.* I reject the majority's contention that, because the general public can choose to not go out in the rain at all, Claimant was placed at *greater risk* merely by walking in the rain. That is simply not what the supreme court indicated in the above-quoted footnote in *Burns.*[3] The majority is simply adopting a positional-risk, but-for argument stated in different terms.

¶ 15 I believe that *Worden* is controlling in this case and the majority's efforts to distinguish it do not succeed.

¶ 16 Finally, although the majority does not address this argument, Claimant has asserted that she was at an increased risk of falling because "her job required her to maintain various records and equipment which she was clutching in an awkward manner at the time of her fall." In making this argument, however, Claimant is arguing that there is evidence in favor of her assertion that her injury arose out of her employment. However, the existence of evidence supporting Claimant's version of events is immaterial because our review is confined to a search for any competent evidence which could support the order of the workers' compensation court. *Owings v. Pool Well Serv.,* 1992 OK 159, ¶ 7, 843 P.2d 380, 383.

¶ 17 While there is evidence that Claimant was holding equipment under her coat to keep it dry and believed this prevented her from stopping her fall, there is also evidence that she did not notice the grass was slick and that the fall happened so fast that she didn't know quite what happened:

Q. Basically it was the slick grass that caused you to slip and fall; is that correct?

\*    \*    \*    \*    \*    \*

A. Well, I had walked over into the grass and was doing fine and it didn't seem slick when I was walking in it and all of a sudden my feet just—I just fell.

Q. Did you trip over your bag or your rain coat or anything like that?

A. No, I didn't trip over anything, next thing I know I was on the ground.

Q. Basically your feet went out from under you after slipping on the grass, correct?

A. Well, it happened so fast, I just assumed that I slipped, I don't know.

The trial court is not required to accord equal weight to all portions of Claimant's testimony. *See Mitchell v. LePak Trucking Co.,* 1977 OK 44, ¶ 3, 561 P.2d 967, 969 (the workers' compensation court "is the sole arbiter of credibility of witnesses and the weight accorded their testimony"). There is, thus, competent evidence from which the workers' compensation court could, and did, find that Claimant fell because of the neutral risk of the wet grass, not because she was carrying employment-related equipment.

I would affirm the decision of the three-judge review panel affirming the trial court's decision.

---

3. The majority's quote from the Texas case on this point ("the general public were not pushing wheelbarrow loads of sand in the hot sun on that day") supports my position. *See American Gen. Ins. Co. v. Webster,* 118 S.W.2d 1082, 1085–86 (Texas Ct.App.1938). Clearly, the Texas court, as well as the supreme court in *Burns,* requires something more than mere presence in the natural condition, even at the employer's behest, to support an award of benefits.