## OKMULGEE GIN CO. et al. v. FIELDS et al.

No. 24444.   Oct. 24, 1933.

Thurman, Bowman & Thurman and T. Raymond Higgins, for petitioners.

Clifton H. Davis, for respondents.

BAYLESS, J. Ed Fields, hereafter called employee, employed as general foreman for Okmulgee Gin Company, received an award from the State Industrial Commission, for permanent total disability for an injury received in the course of and arising out of the employment. The award also ran against the insurance carrier, Zurich General Accident & Liability Insurance Company. The employer and insurance carrier, hereafter referred to as petitioners, petitioned for a review of the award. The petitioners assign two propositions, the second being subdivided:

"1. There is no evidence to support the Commission's finding that the alleged accidental personal injury of claimant was in the course of and arose out of his employment.

"2. There is no evidence to support the Commission's finding that, by reason of the injury, claimant suffered a permanent total disability; that, therefore, the order and award based on this finding is beyond the jurisdiction and power of the Commission and should be vacated."

The argument and authorities of the employee follow the outline of the petitioners' brief.

The first proposition presents the most difficulty. The testimony of the employee upon this point is as follows:

"Q. Now, on October 16th will you please tell the court whether or not you received an injury while in the employment of the Okmulgee Gin Company? A. I did. Q. State how? A. Well, something—got something in my eye. * * * Q. Were you working in the cotton gin on that date? A. Yes, sir. Q. How did you get this substance in your eye? A. Really I couldn't state just how it happened to get in there. Q. Were you working around some machinery, what happened, what were you doing? A. Oh, just as I usually do. We have lots of dust, dirt, different things that might get in a person's eye. I hadn't been troubled with anything getting in my eye until that day. Q. You stated the gin was in operation? A. Yes, sir. Q. When the gin is in operation, is it true the air is full of flying dirt or dust? A. Yes, sir. We have lots of dust and dirt in the air. * * * Q. Now, how far is the rolled bale press room from the seed house, or approximately how far? A. About 25 feet. Q. About 25 feet? The wind was blowing hard that day, was it? A. Well, it is my recollection it was blowing, I can't recall how hard. Q. Blowing about like an Oklahoma wind usually blows, is that correct? A. I think so. Q. Between the seed house and the rolled bale press room, was the wind blowing any harder than it was out on the street or any place else in that im-

mediate vicinity? A. I don't know as it should blow any harder there."

Two physicians, specializing in eye work, testified that each, at different times following October 16, 1931, removed foreign particles from the left eye of the employee. The testimony of Dr. Huber is that the loss of vision is due to a corneal ulcer, which, in turn, in his opinion, was due to the injury of October 16, 1931.

The evidence on the part of the employee as to the actual "accidental injury" is meager. The time of the day and the occasion are not shown; in fact, practically nothing in the nature of res gestae is shown. However, he testified that he got this "something" in his eye and two physicians testified to removing foreign particles from his eye. There is no dispute about the fact of his being engaged in the course of his employment on the day in question. There is no dispute that the air in and about the gin was filled with flying dust, dirt, and other particles. If it was necessary to say, as a matter of practical judgment based upon foresight, that a person situated as the employee was in this instance could receive such an accidental injury, and thereby be rendered industrially blind, totally and permanently disabled, our difficulty would be increased. We said in Consolidated Pipe Line Co. v. Mahon, 152 Okla. 72, 3 P. (2d) 844:

"An injury is received 'in the course of employment' when it comes while the workman is doing the duty that he is employed to perform. It 'arises out of the employment' when there is, apparent to the rational mind, upon consideration of all the circumstances, a causal relation between the conditions under which the work is required to be performed and the resulting injury."

This is the better rule to apply here. Under the evidence submitted to the Commission, its finding that the employee sustained an accidental personal injury arising out of and in the course of the employment is justified.

Petitioners' second proposition is argued in two points, namely: (1) The evidence shows that employee had impaired vision in the right eye prior to the injury in question, and that the extent of his disability now is merely impairment of vision of both eyes, less than "loss of both eyes"; and (2) the evidence shows employee is earning money at this time at his former employment, thereby negativing the presumption of total disability.

In our opinion the decision in the case of Nease v. Hughes Stone Co., 114 Okla. 170, 244 P. 778, is controlling upon the first subdivision of this argument. It is true that the evidence shows the employee has 4 per cent. vision in each eye, but according to the testimony of the experts he is "industrially blind." A proper construction of subdivision 1, sec. 13356, O. S. 1931 (sec. 7290, C. O. S. 1921), does not contemplate complete loss of vision, but, as is said in Schneider's Workmen's Compensation Law (2nd Ed.) vol. 2, sec. 419, p. 1443, quoting from the case of State ex rel. Casualty Co. of America v. Dist. Court of Blue Earth County, 133 Minn. 439, 158 N. W. 700:

"'What is permanent total disability is largely a question of fact, and must depend upon the circumstances of each particular case. The statute itself is highly remedial in its nature. It should be liberally construed and liberally applied to accomplish the beneficial purposes intended, and courts should guard against a narrow construction. * * * In this case the fact that a dim vision still existed in one eye is not controlling. All the facts should be taken into consideration.'"

It is said in Brooks v. Peerless Oil Co., 146 La. 383, 83 So. 663:

"An injury to a common laborer's only eye, so affecting his vision as to incapacitate him for the work he has been doing, and rendering his ability to do any remunerative labor more than doubtful constitutes 'permanent total disability,' within Employers' Liability Act, sec. 8, subsec. 1 (e)."

This same rule is announced in Burt v. Clay, 207 Ky. 278, 269 S. W. 322.

The cases cited by parties contrary to this rule involve injuries to an eye, already impaired in vision to a certain degree, injured and thereby further impaired, but less than total loss of vision or even industrial blindness. Such an injury manifestly falls under the paragraph dealing with permanent partial loss of use of an eye or other member under subdivision 3, sec. 13356, supra. No such provision for the apportionment of the effect of an injury appears in subdivision 1 of sec. 13356, supra, which deals with injuries resulting in total permanent disability only, which is the limit of disability. Anything less than total permanent disability is treated as permanent partial disability, and is capable of measurement and division, as to cause, to a degree of accuracy satisfactory for the administration of the provisions of the act.

Passing to the second portion of the petitioners' argument upon this proposition, we must say what the Commission said

concerning petitioners' evidence on this point: It is speculative. Subdivision 1, section 13356, supra, reads thus:

"Permanent Total Disability: In case of total disability adjudged to be permanent, sixty-six and two-thirds per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability not exceeding 500 weeks; loss of both hands, or both feet, or both legs, or both eyes, or any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases, permanent total disability shall be determined in accordance with the facts."

The term "conclusive proof to the contrary" is intended to require proof of a high degree of certainty to overcome the presumption established by the law. In this case the petitioners showed that the employee, since the injury, was spending his time at the gin, that there were instances when he could make himself useful, and if he did make himself useful the employer "would," in the future sense, pay him what he was worth, which he would judge to be about $1 per day. This is too far short of "conclusive proof," or even proof of a high degree of certainty. If the evidence of the petitioners had shown that the employee was making himself useful, and was actually receiving his house and other things free and compensation in a stated sum of money, the Commission would have been required to take this into consideration and to have awarded accordingly. The award is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, OSBORN, BUSBY, and WELCH, JJ., concur. McNEILL. J., absent.