### CHESTER ROBINSON'S CASE.

Middlesex.     January 6, 1947.— January 30, 1947.

Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Workmen's Compensation Act*, Incapacity, Specific compensation.

A claim under the workmen's compensation act for compensation for alleged total and permanent incapacity within G. L. (Ter. Ed.) c. 152, § 34A, as amended, of an employee who, previous to an injury resulting in loss of one of his eyes, had had poor vision in both eyes and had worked irregularly, properly was denied where the Industrial Accident Board warrantably found that after a period of incapacity following such injury the employee had the same limited ability to work as he had had before the injury.

An employee was not entitled to specific compensation under G. L. (Ter. Ed.) c. 152, § 36 (f), as appearing in St. 1935, c. 333, for loss of one of his eyes through injury where it appeared that previous to the injury he had had less than twenty seventieths of normal vision in that eye.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Baker*, J.

*H. D. Sharpe*, for the claimant.

*C. T. Sexton*, for the insurer.

WILKINS, J.  On August 30, 1944, the employee, while engaged in putting kindling wood into bags, fell and suffered an injury to his left eye, as a result of which the eye was removed.  The single member found that the employee was totally disabled until January 9, 1946, and for that period ordered payment of compensation at the rate of $10.43 a week in the total amount of $739.04.  The single member also found that the employee suffered no loss of vision in the right eye by reason of the injury, and made findings on which he ruled that the employee was not entitled to specific compensation for the loss of the left eye.  The reviewing board, with one member dissenting as to that ruling only, adopted the decision of the single member.  In the Superior Court a decree was entered ordering payment of compensation in the amount of $739.04 and stating that the employee was not entitled to specific compensation for injury to the left eye.  The employee appealed.

The employee contends that he is entitled to compensation on the ground that his incapacity is permanent and total (G. L. [Ter. Ed.] c. 152, § 34A, inserted by St. 1935, c. 364, amended by St. 1943, c. 276, and later revised by St. 1945, c. 717), and that he is entitled to specific compensation for the loss of the left eye and for loss of vision in the right eye.  G. L. (Ter. Ed.) c. 152, § 36 (f), as appearing in St. 1935, c. 333.  See now St. 1946, c. 386, § 1.

These contentions, other than the claim to specific compensation for the loss of the left eye, offer no difficulty.  The decision of the board must stand unless unsupported by the evidence, including all rational inferences permitted by the testimony.  *Amello's Case*, ante, 347, 348.  The board found by adoption of the findings of the single member that prior to the injury the sight in the right eye varied from time to time due to a condition for which the employee was undergoing hospital treatment; that the vision of the right eye was not affected by the injury; that the employee, who had been "on welfare" and had worked irregularly before the injury, had since been adjudged a blind man by the

division of the blind of the department of education and as such was receiving a monthly benefit of $62 (see G. L. [Ter. Ed.] c. 69, § 23, as appearing in St. 1943, c. 526, as amended by St. 1945, c. 541, § 1; § 23B, as added by St. 1945, c. 541, § 2); that he no longer had the same incentive to do irregular work; and that on January 9, 1946, he had the same limited ability to work as he had before the injury. Dr. Hawkins, who made an impartial examination at the request of the single member, in his report, dated January 9, 1946, stated that before the injury vision in each eye was "not very good" and that the employee had been receiving treatment at the Massachusetts Eye and Ear Infirmary; that in his opinion vision in the right eye at the time of the report was not less than it had been immediately prior to the injury; that "the loss of vision in the right eye is not related to the injury"; and that the removal of the left eye "did not have any effect on the loss of vision in the right eye." This report was ample support for the findings of the board, as was the testimony of the only medical witness, Dr. Heffernan, who was called by the insurer. We do not accept the contentions of the employee that the conclusions of the report were vitiated by other statements in it or that the opinion of Dr. Heffernan should be disregarded as matter of law because of his other testimony. No useful purpose would be served by amplification of these points.

As to the contention that the employee is entitled to specific compensation for loss of the left eye, there has been no previous decision in this Commonwealth. Prior to St. 1946, c. 386, which increased the period for payment of compensation in cases thereafter arising, G. L. (Ter. Ed.) c. 152, § 36, as appearing in St. 1935, c. 333, provided, "In case of the following specified injuries the sum of ten dollars a week shall be paid, in addition to all other compensation, for the following periods: . . . (f) For the reduction to twenty seventieths of normal vision in either eye, with glasses, a period of fifty weeks." The board adopted the following from the decision of the single member: "the employee, prior to the injury having less than 20/70 vision in his left eye, is not entitled to specific com-

pensation for the loss of the remaining vision." The board also made the further finding "on the hospital record and the opinion of the eye specialist, Dr. Heffernan, . . . that fifteen days prior to his injury the vision in the employee's injured left eye was limited to 'hand movements,' and that there was no vision in such eye for practical purposes." This finding was supported by the testimony of Dr. Heffernan, which was to the effect that the hospital record sets forth that on August 15, 1944, vision in the left eye was confined to "hand movements"; that this meant that the vision was reduced so that, if one held up his hand between the employee and the light, all he could see was movement; and that there was "no vision there for a practical purpose."

The original workmen's compensation act, St. 1911, c. 751, Part II, § 11 (b), provided for specific compensation for the "entire and irrecoverable loss of the sight of either eye." Statute 1912, c. 571, entitled "An Act to perfect in detail" the workmen's compensation act, by § 2 struck out the words quoted from § 11 (b) and substituted, "reduction to one tenth of normal vision in either eye with glasses." The section was reënacted with the words so substituted by amendment. St. 1913, c. 445, § 1; c. 696, § 1. St. 1914, c. 708, § 6. It thus appears in G. L. c. 152, § 36. By St. 1928, c. 356, the statute was amended to read substantially in its present form except for the amount and period of compensation.[1]

It is argued that under the original act the employee would have been entitled to specific compensation for the loss of the left eye;[2] that the present act is a liberalization

[1] Subsequent amendments increasing the compensation are St. 1935, c. 333, and St. 1946, c. 386, § 1.

[2] There are a number of cases substantially to that effect. *Leach v. Grangeville Highway District*, 55 Idaho, 307. *Chicago Bridge & Iron Co. v. Industrial Commission*, 316 Ill. 622. *Haas v. Globe Indemnity Co.* 16 La. App. 180. *Borello's Case*, 125 Maine, 395. *Kraushar v. Cummins Construction Corp.* 180 Md. 486. *Purchase v. Grand Rapids Refrigerator Co.* 194 Mich. 103. *Liimatta v. Calumet & Hecla Mining Co.* 229 Mich. 41. *Warheim v. Melrose Granite Co.* 161 Minn. 275. *McCadden v. West End Building & Loan Association*, 18 N. J. Misc. 395. *Bervilacqua v. Clark*, 225 App. Div. (N. Y.) 190. *Thompson-Starrett Co. v. Ferguson*, 43 Ohio App. 169. *Okmulgee Gin Co. v. Fields*, 166 Okla. 62. *Shelbyville v. Kendrick*, 161 Tenn. 149. *Hartford Accident & Indemnity Co. v. Leigh*, 57 S. W. (2d) 605 (Tex. Civ. App.). Compare *Ladd v. Foster Bros. Manuf. Co.* 205 App. Div. (N. Y.) 794; *State v. Industrial Commission of Ohio*, 145 Ohio St. 287; *Leed v. State Workmen's Ins. Fund*, 128 Pa. Super. Ct. 572, 574.

of previous statutes; and that it follows that he must be so entitled under the present act. Whatever might have been the employee's rights under the original act, we think that the injury does not fall within the terms of the applicable statute. This clearly specifies that there be a "reduction to twenty seventieths of normal vision." As this amount was all the vision the employee had prior to the injury, he has not suffered the required reduction. In the light of the unambiguous language of the amended statute the contention that it is a liberalization we think is not true in the respect here contended for. The first amendatory act was passed the year following the original act, and, as its title suggests, contained perfecting amendments. By it and by the later amendments, we think, the Legislature has evinced an intent that specific compensation is not payable for an injury to an eye having only twenty seventieths of normal vision. It is for us to construe the act, not to substitute other views for the declared legislative policy.

*Decree affirmed.*